**David Bruce ALLEN, Appellant,**

v.

**Susan L. ALLEN, Respondent.**

**No. WD 51536.**

Missouri Court of Appeals,
Western District.

July 2, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 27, 1996.

Cyril Mehrle Hendricks, Renee T. Duffield, Roger Gordon Brown, Jefferson City, for appellant.

Christina Rhea Neff, Jefferson City, for respondent.

Before EDWIN H. SMITH, P.J., and BRECKENRIDGE and ELLIS, JJ.

EDWIN H. SMITH, Presiding Judge.

David B. Allen appeals the Amended Judgment and Decree of Dissolution entered in the Cole County Circuit Court on August 10, 1995. Appellant asserts three points on appeal: (1) the trial court erred and abused its discretion in awarding respondent $2,500 per month non-modifiable rehabilitative maintenance for thirty-six months because respondent failed to prove she was unable to support herself as required by § 452.335, RSMo [1]; (2) the trial court erred in overruling appellant's motion to modify judgment or in the alternative, to reopen the case for further evidence because it had before it evidence that appellant had experienced a substantial change in circumstances; and, (3) the trial court erred in dividing the parties' personal property and liabilities because the division is not just and equitable.

## FACTS

The parties were married on January 31, 1992. They separated in December, 1993, and the marriage was dissolved on June 20, 1995. Appellant and respondent began living together four or five years prior to their marriage. Husband had been married twice before and had no children. Wife had been married twice before and has two grown children by a prior marriage.

Appellant spent four years in the Army and then completed an Associate in Science degree by going to school on the G.I. Bill. He received his medical degree from the University of Texas and completed an internship in general surgery at Stanford in Connecticut. He was completing a four-year general surgery residency in Flint, Michigan, earning $23,000 to $29,000 when he met and began living with respondent. He then completed a three year cardiac residency in Detroit, Michigan, earning $33,000 per year. The parties married near the end of this residency in Detroit.

The parties moved to Jefferson City, Missouri, after completion of appellant's cardiac residency. Husband became employed as a cardiovascular surgeon at Missouri Cardiovascular initially earning $150,000 per year. He was earning $240,000 per year when his employment with Missouri Cardiovascular ended. He was unemployed for approximately eight months before gaining employment with Collom Carney Clinic in Texarkana, Texas, as a cardiac surgeon. At the time of dissolution, he was forty-three years old and earning $260,000 per year or $22,216 per month.

Respondent holds an Associate of Science degree, a certificate in paralegal studies and a certificate as a profusion assistant. She had worked as a legal secretary, operated a bookkeeping service and was managing her ex-husband's dental practice when she met appellant. She began living with appellant after her previous marriage was dissolved and worked as a profusion assistant with Cycore earning $10.50 per hour. A few months after the parties married, appellant and respondent moved to Missouri where respondent did not work outside the home.

Before marriage, but while living together, the parties commingled assets. They opened

1. All statutory references are to RSMo 1994, unless otherwise stated.

a joint banking account and purchased personal possessions together. Respondent deposited the $30,000 cash-property settlement from her previous marriage, payable in installments of $5,000 down then $1,000 per month into the joint account. Going into the marriage, appellant had student loan debt in the approximate amount of $70,000 and respondent had credit card debt, and they both had car loans. Respondent also owned an IRA, thirty to thirty-five shares of Cycore stock, and interest proceeds from a contract for sale of real estate in Michigan which paid $210 per month for another eight to ten years after the hearing. Respondent owed mortgage payments, due her mother, on the house she sold under contract in the amount of $200 per month. She did not make mortgage payments during the time she lived with appellant because she and appellant needed the money nor did she make payment during the separation period.

Once in Jefferson City, they purchased a house with a mortgage of $1,800 per month. They purchased furnishings for their home although a lot of the marital income went toward reducing the parties' debt. The parties paid extra on appellant's student loans and continued to drive their 1988 Ford Thunderbird and 1987 Chevrolet Cavalier which they owned prior to the marriage. The parties went on several trips to San Francisco, St. Louis, San Antonio, Eureka Springs, and Hawaii.

By the time of the parties' separation, and after the sale of the marital home, the only outstanding joint debts appellant and respondent owed were credit card debt, in the amount of approximately $8,500 and appellant's separate student loan and respondent's separate debts incurred in Florida. Appellant's student loan balance was $36,348.17 at the time of trial. He was paying them back at the rate of $1,500 per month. None of the student loans were acquired by appellant after he met respondent and began living with her. They were all acquired by him before he knew respondent. The credit card debt was in respondent's name because appellant had filed for relief in bankruptcy and respondent had the credit.

The parties had marital difficulties early in their marriage. Approximately four months into their marriage, they physically fought after attending a wedding reception in which they both had been drinking. Approximately eight months into the marriage, Respondent moved to Cold Water, Michigan with her belongings after another fight. She obtained an apartment and sought employment but moved back to Jefferson City eight weeks later. Soon thereafter on December 10, 1993, they had another violent fight. Respondent had a black eye, lost consciousness and lost a chunk of her hair during this encounter. The parties permanently separated and respondent moved to Florida to live with her mother.

Appellant began an affair with Beth Davis in October 1993 before the marriage ended. Both parties used marijuana frequently during the marriage although appellant denied doing so under oath. Appellant's father lived with them in November and December 1993 after he underwent surgery for a double amputation of the legs. Respondent cared for him during his adjustment.

Respondent went to work for her brother, an attorney, who owned a furniture store about two weeks after she moved to Florida. Her job duties included answering the phone and computer work. In March, she went to work for her sister-in-law, a psychiatrist, as a secretary/office manager. She initially worked part-time but moved up to full-time earning $300 per week. She left this job because she suffered from uncontrollable crying jags, insomnia and panic attacks. In February 1995, she began work as a floral arranger earning $6.00 per hour. The floral shop went out of business after Mother's Day and respondent remained unemployed. She believed she had a mental condition that affected her ability to work. She had counseled with either her mother, a clinical therapist, or her sister-in-law every day. Neither respondent's mother or sister-in-law testified at trial. No records were produced and respondent was never prescribed any medication. Respondent could only work for Cycore again if they were contracted with a

hospital in Florida. However, she did not want to work with heart surgeons again.

At trial, respondent's income and expense statement showed her monthly expenses were $3,165. The trial court awarded her non-modifiable rehabilitative maintenance for a period of three years in the amount of $2,500 per month. Appellant filed a timely appeal.

## STANDARD OF REVIEW

Provisions in a divorce decree will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Woolridge v. Woolridge*, 915 S.W.2d 372, 375 (Mo.App.1996); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "The party challenging the divorce decree bears the burden of demonstrating error." *Woolridge*, 915 S.W.2d at 375.

## I.

In Point I, appellant asserts the trial court erred and abused its discretion in awarding respondent $2,500 per month non-modifiable rehabilitative maintenance for thirty-six months because respondent failed to satisfy her burden of proof under § 452.335, RSMo. Under § 452.335, before a spouse can be awarded maintenance, she must show she lacks sufficient property to provide for her reasonable needs and is unable to support herself through appropriate employment. Appellant argues that respondent is fully capable of supporting herself through appropriate employment, and the Missouri Dissolution Laws are not designed to require appellant to finance respondent's desired career change.

The trial court is afforded broad discretion in its orders granting maintenance and will not be disturbed absent an abuse of discretion. *Whitworth v. Whitworth*, 878 S.W.2d 479, 483 (Mo.App.1994); *Vehlewald v. Vehlewald*, 853 S.W.2d 944, 953 (Mo.App. 1993). The appellate court will interfere with a maintenance award only when it is "patently unwarranted or is wholly beyond the means of the spouse who pays maintenance." *Gardner v. Gardner*, 830 S.W.2d 559, 561 (Mo.App.1992). The burden is on the party contesting maintenance to prove that the award of maintenance "shocks the appellate court's sense of justice." *Theilen v. Theilen*, 847 S.W.2d 116, 123 (Mo.App.1992). The evidence is viewed favorable to the decree, disregarding evidence to the contrary and deferring to the trial court even if the evidence could support a different conclusion. *Whitworth*, 878 S.W.2d at 483.

Maintenance is a creature of statute. Mo. Rev.Stat. § 452.335. Section 452.335 provides in pertinent part:

1. In a proceeding for nonretroactive invalidity, dissolution of marriage or legal separation, or a proceeding for maintenance following dissolution of marriage by a court which lacked personal jurisdiction over the absent spouse, the court may grant a maintenance order to either spouse, but *only if it finds that the spouse seeking maintenance:*

(1) *Lacks sufficient property,* including marital property apportioned to him, *to provide for his reasonable needs;* and

(2) Is *unable to support himself through appropriate employment* or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home. (emphasis added).

The court must determine that the requirements stated in subparagraphs (1) and (2) are present before it can award maintenance to either spouse. *In re Marriage of K.B.*, 648 S.W.2d 201, 205 (Mo.App.1983); *Whitworth*, 878 S.W.2d at 483; *See also Beckman v. Beckman*, 545 S.W.2d 300, 302 (Mo.App. 1976). Once it is determined that a maintenance award is proper, the relevant factors to consider in setting the dollar amount and duration of such award are set forth in § 452.335.2:

2. The maintenance order shall be in such amounts and for such periods of time as

the court deems just, and after considering all relevant factors including:

(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) The time necessary to acquire sufficient education *or training* to enable the party seeking maintenance to find appropriate employment;

(3) The comparative earning capacity

(4) The standard of living established during the marriage;

(5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;

(6) The duration of the marriage;

(7) The age, and the physical and emotional condition of the spouse seeking maintenance;

(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

(9) The conduct of the parties during the marriage; and

(10) Any other relevant factors. (emphasis added).

Appellant sets forth his Point I argument of error in four subpoints which we will address.

## A. Respondent is not capable of supporting herself through appropriate employment.

Appellant argues that since respondent has some education, was self-supporting before marriage and has worked in the full-time capacity for a short period of time during their separation, the second requirement of § 452.335 has not been met. We disagree.

▮▮▮ The object of maintenance is to assist the spouse who is unable to be self-supporting through appropriate employment. *Schoolcraft v. Schoolcraft,* 869 S.W.2d 907, 909 (Mo.App.1994); *See Whitworth,* 878 S.W.2d at 483. Missouri law requires more than unemployment at the time of trial. *Beckman,* 545 S.W.2d at 302. A spouse receiving maintenance has an affirmative duty to seek employment. *In re Marriage of Goodding,* 677 S.W.2d 332, 337 (Mo.App. 1984). A childless wife is only allowed maintenance when she lacks sufficient property, including the marital property apportioned to her, to provide for her reasonable needs and she is unable to support herself through appropriate employment. *Beckman,* 545 S.W.2d at 302; *See Whitworth,* 878 S.W.2d at 483.

In the dissolution decree, the trial court made the following findings of fact:

> [Respondent] is currently unemployed.... In Missouri she was not employed outside the marital home and neither party expected respondent to have to work. Since the separation of the parties, respondent has held three part-time positions: two family-business employments ... and one making artificial flower arrangements at a floral shop. The floral shop was on the verge of closing and she has not worked there since Mother's Day 1995. She has a plan to establish her own floral design business which she believes she can have making a profit in three-to-five years. In 1994 her total income was $9,600. In 1995 her total income through this date was $3,120. Respondent has no medical insurance from any group plan available to her. ***Respondent lacks sufficient property to provide for her own needs and is unable to support herself at this time.*** Respondent is in need of rehabilitative maintenance for a limited duration. Petitioner has the financial resources to support respondent.... The Court further finds that Petitioner physically abused Respondent during the marriage. This conduct of Petitioner, while Respondent was not totally without fault, affected Respondent physically and mentally. Respondent's ability to be self supporting was adversely affected by Respondent's conduct. (emphasis added).

Having found that the respondent lacked sufficient property to provide for her own needs and was unable to support herself by suitable employment, the trial court awarded respondent non-modifiable, rehabilitative maintenance of $2,500 per month for three years. We are able to infer from this limited duration rehabilitative maintenance award that the trial court believed respondent would be self-supporting at the end of three years.

The evidence includes testimony by respondent that she has suffered and currently suffers both physically and mentally as a result of appellant's conduct during the marriage which prevents her from securing and maintaining employment. She testified that she receives counseling every day and suffers from crying jags, insomnia and panic attacks. This has affected respondent's repeated attempts at securing adequate employment evidenced by her unsuccessful track record since separating from appellant. The trial court as the fact finder was free to believe the testimony of respondent. The trial court is in the best position to judge the credibility of the witnesses, their sincerity, character and other trial intangibles which may not be shown by the record. Rule 73.01; *In re Marriage of Buchanan*, 882 S.W.2d 288, 289 (Mo.App.1994).

Respondent is not presently employed but she is seeking employment by opening her own floral business. The evidence supports a finding that she is unable to support herself at this time and is, therefore, entitled to maintenance in an amount determined after considering the relevant factors set forth in § 452.335.2. The maintenance award's limited duration of three years reflects the trial court's acceptance that respondent will become self-supporting in three years. We find no abuse of discretion when the evidence is viewed most favorably to the decree.

**B. Respondent's desire to open a flower arrangement business was not mere speculation.**

Appellant argues that respondent's intent to open her own floral business is purely speculation and since the parties were married only three and one-half years he should not be required to help her finance it. He asserts that the $2,500 per month maintenance award is an attempt to mask an order to finance respondent's business venture.

We will first address the issue of speculation. The evidence includes a projection of three years for "Suze Designs" to make a profit. A revenue prospectus prepared by the lending bank was admitted into evidence and reflects a reasonable basis for the trial court to find that the business proposal by respondent is not pie in the sky. The fact that respondent has worked in the floral business, in addition to the revenue prospectus showing a profit in three years, removes respondent's business venture from the realm of speculation.

In support of this subpoint, appellant cites *Featherston v. Featherston*, 710 S.W.2d 288, 291–292 (Mo.App.1986) and *Smith v. Smith*, 702 S.W.2d 505, 510 (Mo.App.1985). Both are distinguishable and not controlling here.

The *Featherston* court, in affirming the denial of maintenance, held

"that there was no reason—other than her desire to pursue a graduate degree in architecture—that she could not obtain full-time employment sufficient to support herself. Wife seeks maintenance, therefore, not because she is unable to support herself, but because she wants husband to finance her education.

Simply stated, this is not a proper basis upon which to grant maintenance."

*Featherston*, 710 S.W.2d at 291–2. Unlike in *Featherston*, where the court found the wife was capable of employment if she was not going to school, the court here specifically found that respondent was not capable of any other employment, except trying to establish the flower shop in an attempt to become self-supporting.

In *Smith*, the court also affirmed a denial of maintenance, holding that "[t]he wife expressed some interest in becoming a beautician. She estimated it would take two to

three years for her to do so. However, this expression was vague and in the nature of speculation, and obviously not the basis for the award of maintenance." *Smith*, 702 S.W.2d at 510. Here, respondent did not merely express some interest in establishing a floral shop. She had previous experience in the business and obtained a prospectus from the bank as to projected revenue and expenses. As previously stated, this removed it from mere speculation as was the case in *Smith*.

■ Next, appellant argues that due to the short duration of the marriage, he should not be required to pay maintenance as ordered. The duration of the marriage is only one of many factors considered in setting an award of maintenance. Mo.Rev.Stat. § 452.335.2. Section 452.335.2 sets forth ten factors to be considered in setting maintenance.

The court determined that respondent did not possess sufficient financial resources to provide for herself at this time. She needed three years to become self-supporting. We can infer that the trial court accepted the floral business as the vehicle in which she was to receive training to enable her to attain this. Furthermore, the parties comparative earning capacity is another factor to consider. At the time of trial, appellant was earning $260,000 per year plus bonuses. The evidence shows that respondent earned $10.50 per hour before the parties married. Appellant's income is considerably higher than that of respondent's potential income.

There is not much evidence on the record establishing the parties' standard of living during the marriage only that appellant's student loan debt was decreased significantly. The next factor to be considered is the obligations and assets, including marital property apportioned respondent and the separate property of each party. The trial court indicated that it was dividing the marital property equally.[2] Respondent's separate

property consisted of a $5,300 IRA, $15,400 equity in a house sold under a land contract, $100 in Psicor, Inc. stock and personal property. Appellant's separate property included his personal property, a restored Volkswagen valued at $20,000, a van, a $20,000 engagement ring for his current fiancée and all savings, investments or property purchased with his income during the parties one and one-half year separation period.

The parties were married on January 31, 1992, and were divorced on July 5, 1995. The marriage lasted approximately three and one-half years. The record does not reflect respondent's age, but the trial court found that she is currently unable to work because appellant's physical abuse during the marriage affected her physically and mentally. The trial court may also consider any other relevant factors including the fact that respondent does not have any medical insurance, appellant engaged in an extra-marital affair and some of appellant's testimony at trial was untruthful.

Appellant correctly cites *Bixler* for the proposition that "one spouse's ability to pay does not justify an otherwise excessive and unwarranted maintenance award." *Bixler v. Bixler*, 810 S.W.2d 95, 100 (Mo.App.1991). "Reasonable needs" is the standard for determining which expenses are allowable in determining a maintenance award. Mo.Rev. Stat. § 452.335.1(1); *Bixler*, 810 S.W.2d at 99–100. "[S]upport payments must be limited to the demonstrable needs of the party receiving support and not to provide an accumulation of capital." *Heins v. Heins*, 783 S.W.2d 481, 483 (Mo.App.1990).

We defer to the trial court's determination as to the credibility of the witnesses and other trial intangibles which the record may not show. Rule 73.01; *In re Marriage of Buchanan*, 882 S.W.2d at 289. Respondent's income and expense statement presented at trial stated her monthly expenses were $3,165 and respondent requested a mainte-

---

**2.** In his Point III, appellant disputes that the trial court did, in fact, divide the marital property equitably.

nance award of $3,000 per month but the trial court awarded her only $2,500 per month.

In our review of the judgment of the trial court, we view the evidence favorable to the decree, disregarding evidence to the contrary and deferring to the trial court even if the evidence could support a different conclusion. *Whitworth*, 878 S.W.2d at 483. The record supports the trial court's finding that a maintenance award of $2,500 per month is needed to provide respondent's reasonable needs. Since respondent has previously worked in the floral business and the bank's revenue prospectus shows three years for "Suze Designs" to recognize a profit, respondent's plan to open her own floral business is removed from speculation. The duration of the marriage is but just one factor of many to be considered. Consideration of the other factors weighs heavily in support of the award of maintenance to respondent and offsets the short duration of the marriage. Thus, we cannot find from the record that the trial court abused its discretion in its award of maintenance.

**C. Respondent was not required to present expert testimony as to her alleged emotional condition affecting her ability to hold employment.**

■ Appellant argues that expert testimony was required to prove respondent's "mental injuries." He relies on caselaw requiring expert testimony to prove physical injuries which affect a spouse's ability to work. Appellant also cites caselaw involving the tort of intentional infliction of emotional distress. He, however, does not cite any legal authority supporting his argument in the context of awarding maintenance.

Section 452.335.2(7) provides that in determining maintenance the court must consider "[t]he age, and the physical and **emotional condition** of the spouse seeking maintenance." (emphasis added). Here, the trial court found that the conduct of appellant during the marriage adversely affected respondent physically and mentally thereby af-

fecting her ability to be self-supporting. In the context of the facts of this case and the court's order, "emotional condition" and "mentally affected" are equivalents.

Section 490.065.1 provides:

In any civil action, if scientific, technical or other specialized knowledge *will assist the trier of fact* to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise. (emphasis added).

The evidence·as to respondent's mental or emotional condition included testimony by respondent that she receives counseling on a daily basis and that she suffers from crying jags, insomnia and panic attacks which affect her ability to hold a job. The trial court was free to believe or disbelieve her testimony. *In re Marriage of Buchanan*, 882 S.W.2d at 289. The trial judge need not be a mental health expert to determine the after effects of the parties marriage on her emotional condition.

Implicit in the trial court's order is the conclusion that the trial judge did not believe he needed the assistance of expert testimony to determine that respondent suffered physically and emotionally as a result of appellant's conduct during the marriage. The order provides in pertinent part "[t]he Court further finds that Petitioner physically abused Respondent during the marriage. This conduct of Petitioner, while Respondent was not totally without fault, affected Respondent physically and mentally. Respondent's ability to be self-supporting was adversely affected by Respondent's conduct."

■ Appellant argues the uncontradicted fact that respondent has worked sporadically since the parties separated demonstrates that she is not suffering any "injuries" which prevent her from working to support herself. We disagree. The statute does not require an injury as inferred by appellant, but allows the court to consider the emotional condition of the party seeking maintenance, which is

exactly what the court did here. The record reflects that respondent has held three jobs in an attempt to become self-supporting and due to physical and mental problems has been unable to maintain employment.

We find no abuse of discretion in the trial court concluding without expert testimony that respondent suffered from emotional problems affecting her ability to work. The evidence in the record supports the trial court's finding that respondent has suffered physically and mentally as a result of appellant's conduct and her ability to be self-supporting was ultimately affected.

### D. Trial court erred in awarding *non-modifiable* maintenance.

Appellant argues that the maintenance award should have been designated as a modifiable award instead of non-modifiable. We agree.

 Section 452.335.3 provides "[t]he maintenance order shall state if it is modifiable or nonmodifiable...." *Whitworth*, 878 S.W.2d at 485. "The statute, however, does not bestow unfettered discretion on the trial court. Just as an order terminating maintenance at a definite date in the future must be supported by substantial evidence of an impending change of the parties circumstances, (cites omitted), a maintenance order providing that it is 'nonmodifiable' must be justified by the facts and circumstances of that particular case." *In re Marriage of Lawry*, 883 S.W.2d 84, 90 (Mo.App.1994). "Where future events which may be pertinent to the issue of maintenance are uncertain, such an award should be modifiable." *Id.*

 Section 452.370.3 provides that "[u]nless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future statutory maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance." Here, the trial court ordered:

That petitioner is ordered to pay to respondent the sum of $2,500 per month as

maintenance for thirty-six (36) months. *Said maintenance is non-modifiable. It does not cease upon the remarriage of respondent.* It is a claim against petitioner's estate in the event of his death. Said maintenance is to be paid through the Circuit Clerk of Cole County as trustee for said respondent, beginning July 1, 1995, and ending thirty-six (36) months thereafter. (Emphasis added).

Thus, the issue here is whether designating the maintenance award as nonmodifiable was justified by the facts and circumstances in this case.

In *Lawry* the court reversed the trial court as to its maintenance award holding that

[t]here is nothing in the record in the instant case to indicate that there was a justification for ordering maintenance which might survive remarriage by Wife or other events which might affect the propriety of the award. Where future events which may be pertinent to the issue of maintenance are uncertain, such an award should be modifiable. *See Harris v. Harris*, 784 S.W.2d 630, 631 (Mo.App. W.D. 1990).

Maintenance is founded on need and may extend only as long as the need exists. *Cates v. Cates*, 819 S.W.2d 731, 735 (Mo. banc 1991). Thus, if it is uncertain that future events might obviate the need or basis on which maintenance is predicated, the award should be modifiable.

The situation that existed in *Lawry* exists here. In the instant case the trial court ordered that the maintenance is to survive respondent's remarriage. Given the reasons for the award of maintenance in this case, there is nothing in the record to indicate a justification for ordering maintenance to survive remarriage without the opportunity to modify. Therefore, that portion of the order making maintenance nonmodifiable must be reversed and remanded.

### II.

In Point II, appellant contends the trial court erred in overruling appellant's motion

to amend or modify judgment or in the alternative, to reopen the case for further evidence as to his ability to pay the maintenance ordered because it had before it evidence that appellant had experienced a substantial change in circumstances. We disagree.

Appellant filed a Rule 75.01 motion to modify judgment or in the alternative to reopen the case for further evidence because he received a letter six days after the judgment was entered that the cardiovascular surgery program in which he worked would terminate within sixty days leaving him unemployed. Respondent also filed a Rule 75.01 motion. Rule 75.01 provides in pertinent part that "[t]he trial court retains control over judgments during the thirty-day period after entry of judgment and may, after giving the parties an opportunity to be heard and for good cause, vacate, reopen, correct, amend, or modify its judgment within that time."

A hearing on both motions was held on July 24, 1995, in the chambers of the trial judge. The hearing was not conducted on the record. Therefore, we are without a transcript of that proceeding. After the hearing, the trial court entered an amended judgment dated August 10, 1995, which provides in pertinent part:

> ... Petitioner and respondent both filed Motions for the Court to Amend its Judgment of July 5, 1995, or in the Alternative to Reopen the Case for further Evidence. The Motions to Reopen the Evidence are denied. The Motions to Amend the Judgment are granted....

It appears from the record that the trial court granted respondent's motion to amend judgment and the requested relief, but in fact, denied appellant's motion to amend because the relief he requested was not incorporated in the amended judgment.

"The record on appeal must contain all of the record, proceedings and evidence necessary for a determination of the questions presented to the appellate court. Statements in a brief which are unsupported by the record are not evidence and are insufficient to supply essential matters for review. Evidentiary omissions will be taken as favorable to the trial court and favorable to the trial court and unfavorable to appellant." *Lawry*, 883 S.W.2d at 89 (citations omitted). Thus, because there is no record before us as to what evidence, if any, was presented in support of appellant's Rule 75.01 motion, the record is insufficient to support appellant's argument and we are unable to find that the trial court erred in not granting the relief appellant requested in his motion.

### III.

■ In Point III, appellant asserts the trial court erred in dividing the parties' personal property and liabilities because the division is not just and equitable. In support of his assertion, appellant cites us to Paragraph 15 of the amended judgment which provides in part that "[t]here has been marital misconduct but that misconduct does not cause the Court to believe any division of property other than *equal* is required." (emphasis added). From this we find the trial court, after considering the factors in § 452.330, intended an equal division of the marital property.

The trial court divided the parties' marital property and debt as follows:

| | Respondent (Wife) | |
|---|---|---|
| 1. | Jefferson Bank Account | $ 8,210 |
| 2. | 1987 Chevy Cavalier | $ 1,400 |
| 3. | Household furniture and personal goods | $10,000 |
| 4. | Jefferson Bank CD # 59940 | $23,708.31 |
| 5. | Jefferson Bank CD # 62603 | $12,169.91 |

| | Petitioner (Husband) | |
|---|---|---|
| 1. | Salary | $ 6,000 |
| 2. | Jefferson Bank Account | $ 1,000 |
| 3. | 1988 Ford | $ 3,750 |
| 4. | Household furniture and personal goods | $ 1,500 |
| 5. | Retirement w/ Missouri Cardiovascular | $17,827 |
| 6. | Jefferson Bank CD # 62603 | $ 9,470.50 |

| | | SUBTOTAL | $39,547.50 |
| SUBTOTAL | $55,488.22 | — Respondent's attorney Fees | |
| | | and Costs | — 8,274 |
| — Credit cards to be paid by | | | |
| respondent | — 7,666 | TOTAL: | $31,273.50 |
| — Attorney's fees and costs | — 8,274 | | |
| TOTAL: | $39,548.22 | | |

From this we find as contended by appellant that the trial court reflected respondent's attorney's fees and costs as a debt for her without also reflecting the same amount as money due her as a court-ordered reimbursement from appellant for her attorney's fees and costs. Such omission distorts the true percentage division of property and debts.

Reflecting the $8,274 court-ordered reimbursement to respondent results in a net to appellant of $31,273.50 and a net to respondent of $47,822.22 which renders the percentage division of 40% to appellant and 60% to respondent. This does not approach an equal division of property and debts as the trial court indicated was required under the facts and law of the case. Thus, because the trial court's division of property and debts is contrary to its finding that an equal division was required, we must reverse and remand for the trial court to divide the property and debts in the manner which it indicated was required.

## CONCLUSION

The trial court's Amended Judgment and Decree of Dissolution of Marriage of August 10, 1995, is affirmed except those portions of the judgment and decree regarding the non-modifiability of maintenance and the property and debt division which are reversed and remanded for the trial court to amend its judgment in accordance with this opinion.

All concur.