**Dale Edward GERECKE, Petitioner–Appellant/Respondent,**

v.

**Cecelia Gayle GERECKE, Respondent–Respondent/Appellant.**

Nos. 21375, 21355.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 30, 1997.

John P. Heisserer, Dickerson, Rice,Spaeth, Heisserer & Summers, L.C., Cape Girardeau, for Appellant.

Kimberly S. Essary, Oliver, Oliver & Waltz, P.C., Cape Girardeau, for Respondent.

BARNEY, Judge.

The fourteen-year marriage between Dale Edward Gerecke (Ex–Husband) and Cecelia Gayle Gerecke (Ex–Wife) was dissolved on October 4, 1994. The marriage produced no children. Their dissolution decree ordered Ex–Husband, *inter alia*, to pay Ex–Wife $1,000.00 per month as maintenance. The instant action was brought by Ex–Husband to terminate his maintenance obligation to Ex–Wife. Following a court-tried case, the trial court entered a "non-modifiable" order which terminated Ex–Husband's decretal maintenance obligation to Ex–Wife. Both parties appeal. We have consolidated their respective appeals herein.

Ex–Wife appeals the trial court's order, assigning four points of trial court error. First, Ex–Wife maintains that the trial court erred in making its order non-modifiable. Second, Ex–Wife maintains that the trial court erred in determining that her business, Victorian Memories, had become successful and profitable. Third, Ex–Wife contends that the trial court erred in determining that Ex–Husband's income had significantly decreased. Finally, Ex–Wife contends that the trial court erred in determining that she had sufficient income and property to satisfy her reasonable needs for support.

Ex–Husband appeals the trial court's order, assigning one point of trial court error. He asseverates that the trial court should have retroactively terminated his maintenance obligation, effective February 29, 1996, rather than on July 30, 1996, the date of the trial court's order.

## I.

■ Appellate review of a ruling on a motion to modify maintenance is pursuant to Rule 73.01(c) and is limited to a determination of whether it is supported by substantial evidence, whether it is against the weight of the evidence, or whether it erroneously declares or applies the law.[1] *Butts v. Butts,* 906 S.W.2d 859, 861 (Mo.App.1995)(citing *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976)). We accept all reasonable inferences and evidence favorable to the order and disregard all contrary inferences. *Butts,* 906 S.W.2d at 861. This Court will also give deference to the trial court in judging the credibility of witnesses. *Gibson v. Adams,* 946 S.W.2d 796, 800 (Mo.App.1997). The trial court may believe or disbelieve all, part, or none of the testimony of any witnesses. *Butts,* 906 S.W.2d at 861. An appellate court will defer to the trial court on its decision to modify a maintenance award even if the evidence could support a different conclusion. *Id.* It is with these guidelines that we review the issues raised on appeal.

## II.

### (Ex–Wife's Appeal No. 21375)

■ For the sake of clarity, we address Ex–Wife's four assignments of trial court error out of order. Further, we discuss her second, third and fourth assignments of error together because they are inseparably related. In these three assignments of error, Ex–Wife maintains that the trial court's order which terminated Ex–Husband's maintenance obligation to her was against the manifest weight of the evidence because (1) she does not have the ability to support herself, (2) her business' success was immaterial as to her individual income, and (3) Ex–Husband failed to meet his burden of showing a substantial change in his financial circumstances proving that his income had significantly decreased, particularly in comparison with hers.

■ Pursuant to section 452.370 a modification of maintenance requires "a showing of changed circumstances so substantial and continuing as to make the terms unreasonable."[2] *See* § 452.370.1; *see also Butts,* 906 S.W.2d at 861–62. The statutory standard for modification is designed to be strict so as

---

**1.** All Rule references are to Missouri Court Rules (1997).

**2.** All statutory references are to RSMo 1994.

to discourage recurrent and insubstantial motions for modification. *See Butts*, 906 S.W.2d at 862. The burden of proving substantial and continuing change rests with the moving party. *Id.*

We note that the trial court did not issue any specific findings of fact and conclusions of law and the record failed to reveal any request for same by either party. "[A]ll factual issues upon which no specific findings have been made should be interpreted as having been found in accordance with the result reached." *Gibson*, 946 S.W.2d at 800.

Ex–Wife maintains that it was trial court error to determine that she was earning a sufficient income to meet her reasonable needs. Ex–Wife contends that her business is, in fact, not financially successful and therefore her individual income derived from that business is insufficient to meet her financial obligations.

Ex–Wife has owned and operated the business Victorian Memories in Cape Girardeau, Missouri, since about 1993.[3] Ex–Wife leases a 3,000 square feet retail space in the West Park Mall in Cape Giradeau.

For fiscal year 1994, Ex–Wife's first year in business, Victorian Memories generated sales of $196,311.85.[4] The gross profit for that year was $88,906.59. After paying operating expenses, Ex–Wife's business had a net income of $34,427.24. In fiscal year 1995, sales amounted to $100,912.27.[5] Gross profits for fiscal year 1995 were $7,530.42. After paying operating expenses, Ex–Wife's business experienced a net loss of $29,956.90.[6] However, she testified that for fiscal year 1996, her business generated sales of $207,-797.88. Gross profits for the fiscal year were $41,942.30.[7] The business had a net income of $5,515.38 after payment of operating expenses and taxes for fiscal year 1996. Ex–Wife's stockholder's equity increased from $4,970.00 for fiscal year 1995 to $10,486.00 for fiscal year 1996.

Financial statements prepared by Ex–Wife's accountant, Mr. Steve Dirnberger, corroborated the above sales and stockholder's equity figures. There was no testimony to suggest that Ex–Wife's business would not experience future prosperity and profitability. To the contrary, Mr. Dirnberger testified that Ex–Wife's business has experienced substantial growth in inventory value and assets during the previous fiscal year.[8] Mr. Dirnberger also testified that Ex–Wife has been successful in lowering her business-related debts.

We note that maintenance awards proceed from "the need for reasonable support by one spouse from the other after the disruption of the marriage." *Cates v. Cates*, 819 S.W.2d 731, 734 (Mo. banc 1991). "[M]aintenance issues for support and *only* for support—and then, until the dependent spouse achieves a reasonable self-sufficiency."[9] *Id.* at 735. A maintenance award may extend only so long as the need for support exists. *Id.*

In our review of the parties' marriage dissolution decree, we note that the trial court stated that while Ex–Wife is unemployed at the present time, "[i]t is contemplated by the parties that the [Ex–Wife], who

---

3. We note that Ex–Wife has a college degree in business administration and has extensive retail management experience.

4. February 1993 to February 1994.

5. During fiscal year 1995, Ex–Wife closed her business for several months. This would have been the period of time when the parties' dissolution of marriage action was filed. Ex–Wife testified that "I had products that I needed to pay for. That's why I closed down."

6. Ex-Wife testified that she believed that an accounting error of approximately $15,000.00 contributed to the reported loss during fiscal year 1995.

7. Despite the sales and profits generated by Ex–Wife's business, she testified with regard to her salary that "to date, I have drawn $1,000.00."

8. FY 1996 inventories showed a value of $54,-607.65, while total assets were approximately $79,000.00.

9. We note that in ascertaining maintenance awards, a determination of "reasonable needs" as used in section 452.335 does not automatically equal the standard of living established during the marriage. *Brueggemann v. Brueggemann*, 551 S.W.2d 853, 857 (Mo.App. banc 1977); *see also L.A.L. v. L.L.*, 904 S.W.2d 50, 54 (Mo.App. 1995).

does have considerable retail management experience and who has owned and operated her own retail gift shop, will re-open her retail gift shop." [10] The trial court's dissolution decree which awarded maintenance to Ex–Wife was constructed in a manner suggesting that such maintenance award would indeed be modified after Ex–Wife began fruitfully operating her business again. The maintenance award was expressly made modifiable. *See* § 452.335.3.

■ Ex–Wife re-opened her store within one month following the parties' marriage dissolution. Based on the testimony and financial statements regarding the prosperity of Ex–Wife's business, it is apparent that since the marriage dissolution decree was entered, Ex–Wife has vigorously managed her gift shop into a financially successful enterprise, which generated gross profits in excess of $40,000.00 for fiscal year 1996. "As sole shareholder, [she] could unilaterally control the amount of [her] compensation." *In re Marriage of Gardner*, 890 S.W.2d 303, 305 (Mo.App.1994). Instead of taking compensation, however, she chose to augment her inventories and contribute to the increase of stockholder's equity in her corporation. Therefore, despite Ex–Wife's protestations to the contrary, based on the sales and profits generated by her business, there is sufficient evidence supporting the trial court's determination that Ex–Wife is able to derive a sufficient personal income from her employment in connection with that business to meet her reasonable needs.[11] *See Cates*, 819 S.W.2d at 735.[12]

While there are always risks inherent in the operation of a business, and indeed, business success cannot always be predicted, there is nothing in the record to suggest that any uncertain future events will compromise Ex–Wife's ability to provide for her own reasonable needs through her employment in connection with the business she owns and operates. *See Allen v. Allen*, 927 S.W.2d 881, 886 (Mo.App.1996).

■ Maintenance payments must be limited to the needs of the party receiving support and, when appropriate, as here, for a limited duration, and to not provide for an accumulation of capital. *See id.* at 888; *Cates*, 819 S.W.2d at 735.

■ Ex–Wife also contends that the trial court's order to terminate Ex–Husband's maintenance obligation has the effect of requiring her to consume her apportioned share of marital property. Specifically, she avers that the order will require her to consume the assets of her business, Victorian Memories, awarded to her pursuant to the parties' dissolution decree.

"It is well-settled that a spouse is not required to deplete his or her portion of marital assets for living expenses before being entitled to maintenance." *Witt v. Witt*, 930 S.W.2d 500, 503 (Mo.App.1996). Here, however, the trial court's order does not require Ex–Wife to consume the *assets* of Victorian Memories for her subsistence. Ex–Wife's business is an income-producing asset. *See Lawry v. Lawry*, 883 S.W.2d 84, 89 (Mo.App.1994). As a result of the financial success of the business since the marriage dissolution, we believe that the trial court's order reflected its belief that Ex–Wife was able to derive a sufficient income from her business to meet her reasonable needs

---

**10.** As a general rule, a former spouse receiving maintenance has an affirmative duty to seek employment. *Allen v. Allen*, 927 S.W.2d 881, 886 (Mo.App.1996).

**11.** Although Ex–Wife asserted at trial that her financial condition had declined since the dissolution of her marriage, there was not extensive evidence in the record describing her reasonable personal needs. There was evidence of medical bills arising largely from allergies. However, she had missed but one day of work within a year of the hearing. Ex–Wife's home mortgage payment was about $700.00 per month. Additionally, she testified that her food bill was "probably less

[than before the dissolution of her marriage]" and that her utility bills also decreased. Ex–Wife also testified that she had no recreational expenses and that her automobile expenses were limited to fuel, going back and forth to the store and going to the doctor. Finally, although Ex–Wife testified that she depended on her mother for financial assistance, there was no detailed evidence presented relating to what degree her mother provided such financial assistance.

**12.** The trial court was entitled to disbelieve Ex–Wife's evidence regarding her income. *Crews v. Crews*, 949 S.W.2d 659, 667 (Mo.App.1997).

without negatively impacting the assets of the business. Point denied.

■ Next, Ex–Wife maintains that the trial court erred in considering the financial success of her business when it assessed her individual financial success. Ex–Wife maintains that the success of her business was immaterial and irrelevant to her individual financial success.

The trial court found that Ex–Wife's business "has both been successful and profitable and that [Ex–Wife] is able to meet her reasonable needs from her employment in connection with said business." [13] Ex–Wife's individual income is derived directly from her business. Therefore, it was not only relevant and material, but indispensably necessary, for the trial court to have considered the success or failure of that enterprise in assessing Ex–Wife's individual financial success. Her argument to the contrary is not supported by any relevant authority and is otherwise without merit. Point denied.

■ Ex–Wife also assigns error to the trial court in terminating Ex–Husband's maintenance obligation because he "wholly failed to show that he had a decrease in income that was a permanent decrease or a substantial or continuing change."

■ Initially, we note that "one spouse's ability to pay does not justify an otherwise excessive and unwarranted maintenance award." *Allen*, 927 S.W.2d at 888.

Ex–Husband testified that the trial court based its original maintenance award to Ex–Wife on his income for 1993, which was $92,-500.00. He testified that the preceding and subsequent years to 1993 reflected a markedly lower income level. For example, Ex–Husband testified that the year preceding the marriage dissolution, 1992, he earned $68,794.00 and that the year following the marriage dissolution, 1994, he earned $74,-600.00. Ex–Husband testified that "[n]inety-two thousand dollars in '93 was the most

money that I've made, and I haven't made that much since." Ex–Husband testified that a more accurate reflection of his average annual income, as evidenced by his tax returns, was $67,000.00 or $68,000.00.

■ Changed circumstances sufficient to support modification must be proven by detailed evidence, which renders the original maintenance award unreasonable. *Lamont v. Lamont*, 922 S.W.2d 81, 85 (Mo.App.1996). We believe that the evidence of Ex–Husband's substantial decrease in income of approximately $18,000 per year, combined with the evidence of Ex–Wife's successful operation of her retail gift shop, constituted sufficiently detailed evidence supporting the trial court's decision to terminate Ex–Husband's maintenance obligation. Point denied.

■ Ex–Wife also maintains that the trial court erred in designating its judgment as "non-modifiable" because (1) the issue was not before the trial court to decide, (2) it violated her due process rights, (3) the trial court was without statutory authority to enter such a judgment, and (4) the judgment was not supported by substantial evidence.

We presume that the trial court's designation of its judgment as "non-modifiable" was made pursuant to section 452.335. We note that upon entry of a dissolution of marriage decree where maintenance has been awarded, the trial court should conform its judgment to section 452.335 and indicate whether the judgment is modifiable or non–modifiable. *See* § 452.335.3; *Spauldin v. Spauldin*, 945 S.W.2d 665, 669 (Mo.App.1997).

However, section 452.335 applies only to maintenance awards which the court initially orders pursuant to a marriage dissolution decree. *Sifers v. Sifers*, 544 S.W.2d 269, 270 (Mo.App.1976); *see also Williams v. Williams*, 932 S.W.2d 904, 906 (Mo.App. 1996). A modification of maintenance is governed by section 452.370. *Id.* There is no statutory authority contained in section 452.370 to permit a trial court to designate a

---

13. Ex–Wife cited to *Penn v. Penn*, 655 S.W.2d 631 (Mo.App.1983) as support for the proposition that it was error for the trial court to consider the success of Ex–Wife's business in assessing her financial ability to support herself. However, *Penn* merely holds that in a dissolution pro-

ceeding a court may not enter a decree that "purports to operate on the property of [a] corporation—an entity not a party to the litigation nor otherwise subject to the jurisdiction of the court." *Id.* at 632. *Penn* has no application in the instant matter.

modification of maintenance judgment as either modifiable or non–modifiable. *See* § 452.370.

■ In this regard, the decision in *Ethridge v. Ethridge,* 604 S.W.2d 789 (Mo.App. 1980) is instructive. In *Ethridge,* the parties' dissolution decree provided that maintenance would be provided to the ex-wife for a term of two years. *Id.* at 790. After the two-year term expired and the ex-husband's maintenance obligation terminated, the ex-wife filed a motion to modify to revive the payment of maintenance. *Id.* The trial court denied the motion on the basis that it lacked jurisdiction to revive a maintenance award after it has been terminated. *Id.* The court of appeals affirmed. *Id.* The court concluded that "[t]he maintenance provisions of the decree were fully executed and the court had no authority under appellant's motion to modify to re-institute the payment of maintenance." *Ethridge,* 604 S.W.2d at 791; *see also Givens v. Givens,* 599 S.W.2d 204, 206 (Mo.App. 1980). Thus, where a maintenance obligation pursuant to a dissolution decree has been terminated and "there remains no future maintenance obligation under the existing decree, then the obligation to pay maintenance may not be revived." *See id.* at 791.

In the instant matter, although the maintenance award in the parties' dissolution decree was expressly made modifiable, the structure of the judgment suggested that such maintenance award was only temporary or rehabilitative in nature. While the trial court's judgment does not contain specific findings of fact and conclusions of law regarding its termination of maintenance, we nonetheless presume, as we must, that the trial court found that the terms of the maintenance award were fully executed when it made its order "non-modifiable." *See id.* at 790–91.

■ However, we find that the trial court's designation of its judgment as "non–modifiable," purportedly pursuant to section 452.335, was without statutory authority. *See* § 452.370; *Sifers,* 544 S.W.2d at 270; *see also Williams,* 932 S.W.2d at 906. We, nev-

ertheless determine that the error was harmless and did not affect the merits of the action because there is evidentiary support for the trial court's order terminating Ex–Husband's maintenance obligation to Ex–Wife. *See Lewis v. Wahl,* 842 S.W.2d 82, 84–85 (Mo. banc 1992).[14] Point denied.

■ Finally, Ex–Wife asserts that her constitutional rights were violated when the trial court designated its judgment as non-modifiable. However, Ex–Wife failed to develop her argument or to cite any authority outside of the constitutional provisions themselves to support her contention. *See, e.g., State v. Woodworth,* 941 S.W.2d 679, 697 (Mo.App.1997). Where a party fails to support a constitutional contention with relevant authority or argument beyond conclusions, the contention is considered abandoned. *Beatty v. State Tax Comm'n,* 912 S.W.2d 492, 498–99 (Mo. banc 1995). Point denied.

As noted previously, we will defer to the judgment of the trial court on a motion to modify a maintenance award even if the evidence could support a different conclusion. *See Butts,* 906 S.W.2d at 861. Therefore, based on the foregoing, we see no reason to disturb the trial court's decision to terminate Ex–Husband's maintenance obligation. The trial court's decision is supported by substantial evidence.

### III.

#### *(Ex–Husband's Appeal No. 21355)*

■ In Ex–Husband's sole point on appeal, he maintains that the trial court's order which terminated his maintenance obligation of $1,000.00 per month should have been made effective February 29, 1996, because that is the date upon which Ex–Wife's business records, covering the previous three fiscal years, established that her business had become financially successful. Ex–Husband contends therefore that it was trial court error to terminate his maintenance obligation on July 30, 1996, six months later.

Conceptually, the retroactivity of a judgment terminating maintenance and one modi-

---

14. By both statute and rule, an appellate court is not to reverse a judgment unless it believes the error committed by the trial court against the appellant materially affected the merits of the

action. *Lewis v. Wahl,* 842 S.W.2d 82, 84–85 (Mo. banc 1992) (citing Rule 84.13(b); § 512.160.2). The error in the instant matter had no effect on the merits of the action.

fying maintenance are similar. *See Dimmitt v. Dimmitt*, 849 S.W.2d 218, 221 (Mo.App. 1993). "The date that modification of maintenance occurs is within the sound discretion of the trial court." *Id.* "The retroactivity of a modification of maintenance is a matter within the sound discretion of the trial court." *Zimmerman v. Zimmerman*, 913 S.W.2d 76, 79 (Mo.App.1995); *see also Dimmitt*, 849 S.W.2d at 221. To prove an abuse of that discretion, Ex–Husband must show that the ruling of the trial court was "clearly against the logic of the circumstances then before the court and was so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *In re Marriage of DeWitt*, 946 S.W.2d 258, 261 (Mo. App.1997).

Our examination of the record in this matter fails to reveal any abuse of trial court discretion. Point denied.

Because of our holding, the issues raised by Ex–Husband's motion to dismiss Ex–Wife's appeal for violations of Rule 84 are moot.

The judgment is affirmed.

PARRISH, P.J., and MONTGOMERY, C.J., concur.