**In re the MARRIAGE OF Sharon Christine CLIFT and Richard Michael Clift.**

**Sharon Christine Clift, Petitioner–Appellant–Respondent,**

and

**Richard Michael Clift, Respondent–Respondent–Cross Appellant.**

**Nos. 24711, 24750, 24757 and 24783.**

Missouri Court of Appeals,
Southern District,
Division Two.

June 25, 2003.

Terry Daley Schwartze, Legal Services of Southern Mo., Rolla, MO, for Appellant.

Colin P. Long, Tyce S. Smith, Smith Turley Long, Waynesville, MO, for Respondent.

JAMES K. PREWITT, Presiding Judge.

Sharon Christine Clift ("Wife") and Richard Michael Clift ("Husband") were married March 17, 1973. Wife was age seventeen and Husband was eighteen at the time of their marriage. Together they had one child, April, born April 23, 1977, who was emancipated at the time of this action.

Wife and Husband separated on or about July 10, 1999. Wife filed her petition for dissolution on February 8, 2000. Her petition included a request for maintenance, alleging that she lacked sufficient property and was unable to support herself through appropriate employment.

On March 29, 2000, Husband filed his Answer and Cross–Petition. The matter was heard on June 20, 2001. As the parties had reached a settlement regarding the division of property prior to trial, the only issues before the trial court were Wife's request for maintenance and the division of $15,000.00 removed by Wife from a joint account of the parties. The trial court found the marriage to be irretrievably broken and dissolved the marriage, approving the property and pension division agreed to by the parties.

However, the trial court took the matters of maintenance and the $15,000 withdrawal from the couple's joint account by Wife under advisement. It also allowed an additional thirty days for Wife to undergo further psychological evaluation and to present additional expert testimony regarding her need for maintenance and a timeframe therefor in order to provide a sufficient legal basis for such a determination. Additional time was also provided for the valuation of Husband's pension plan.

The trial continued on September 12, 2001. The parties stipulated to the admission of Wife's medical report from Elbert H. Bolsen, M.S., N.D., in lieu of testimony. The trial court took the remaining matters under advisement.

On October 22, 2001, the trial court entered its judgment and decree of dissolution. An amended judgment and decree of dissolution was filed December 28, 2001 on Wife's Motion to Reopen, Correct, Amend or Modify Judgment. Wife filed her notice of appeal on January 15, 2002 (No. 24711); Husband filed his notice of appeal January 24, 2002 (No. 24650).

On January 25, 2002, the trial court filed its second amended judgment and decree. Non-modifiable, temporary maintenance was awarded to Wife on the trial court's finding that Wife "is suffering from an adjustment disorder and she is in need of temporary maintenance to provide for her support while she is treated and prepares to return to work." Husband was ordered to pay such maintenance to Wife in the amount of $650.00 per month for thirty-six months. Real property acquired by the couple during the marriage was ordered sold and the net proceeds divided equally between the parties. The judgment further provided that Wife would have use of the marital home until it was sold, with Husband to pay the monthly mortgage payments in the interim. Personal property and marital debts were divided. Wife was awarded one-half of Husband's pension benefits as of the date of the dissolution and was ordered to pay to Husband $7,500.00, representing one-half of the amount Wife withdrew from the couple's joint account when they separated.

Wife's notice of appeal was filed February 14, 2002 (No. 24757), and Husband filed his notice of appeal February 22, 2002 (No. 24783). The four appeals were consolidated.

■ Wife's sole point relied on contends that the trial court erred in limiting the duration of the maintenance awarded, as "there is no substantial evidence before the court [from which] the court could determine that there was an impending change in the financial condition of the parties to limit the duration of the maintenance award."

Husband cross appeals, contending that the trial court erred in awarding temporary maintenance as "the evidence did not support a finding that [Wife] was in need of maintenance and that [Wife] could not meet her reasonable needs through property or appropriate employment."

■ The trial court's award of maintenance must be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declared or applied the law. *Buckner v. Buckner*, 912 S.W.2d 65, 68 (Mo.App.1995). An appellate court must view the evidence as favorable to the decree and disregard contrary evidence, deferring to the trial court in the event the evidence could support a different conclusion. *Judy v. Judy*, 998 S.W.2d 45, 50 (Mo.App.1999). An "award of maintenance is within the sole discretion of the trial court and will not be disturbed absent an abuse of discretion." *Id.* The party contesting the maintenance award bears the burden of proving that the award "shocks the appellate court's sense of justice." *Id.*

The trial court is in the best position to judge the credibility of the witnesses, their sincerity, character and other trial intangibles which may not be apparent in the record. *Allen v. Allen*, 927 S.W.2d 881, 887 (Mo.App.1996).

■ Section 452.335.1, RSMo 2000, provides that a trial court may award maintenance to a spouse "only if it finds" that the spouse requesting maintenance "[l]acks sufficient property ... to provide for his [or her] reasonable needs" and "[i]s unable to support himself [or herself] through appropriate employment...." "Reasonable needs," as used in § 452.335.1(1), "does not automatically equal the standard of living established during the marriage." *Gerecke v. Gerecke*, 954 S.W.2d 665, 668 n. 9 (Mo.App.1997). Rather, it is the standard for determining which expenses are allowable in determining a maintenance award. *Allen*, 927 S.W.2d at 888.

■ Courts have awarded rehabilitative maintenance in circumstances where the party is in need of further training or education to support himself or herself. *Kovacs v. Kovacs,* 869 S.W.2d 789, 793 (Mo.App.1994). In addition, courts may consider the effects of the physical or mental condition of the spouse seeking maintenance on a party's capacity to work and earn. *In re Marriage of Bowman,* 972 S.W.2d 635, 640 (Mo.App.1998).

■ "The object of maintenance is to assist the spouse who is unable to be self-supporting through appropriate employment." *Allen,* 927 S.W.2d at 886. A spouse receiving maintenance has an affirmative duty to seek employment. *Id.* Unemployment alone is not enough to require an award of maintenance. *Wallace v. Wallace,* 839 S.W.2d 354, 357 (Mo.App.1992).

■ However, maintenance awards cannot be based on mere speculation as to the future condition of the spouse receiving maintenance. *Childers v. Childers,* 26 S.W.3d 851, 857 (Mo.App.2000). "Just as an order terminating maintenance at a definite date in the future must be supported by substantial evidence of an impending change of the parties' circumstances, a maintenance order providing that it is 'nonmodifiable' must be justified by the facts and circumstances of that particular case." *In re Marriage of Lawry,* 883 S.W.2d 84, 90 (Mo.App.1994). "Where future events which may be pertinent to the issue of maintenance are uncertain, such an award should be modifiable." *Id.*

Wife contends that she "is a 46–year old woman with a GED who worked sporadically during the marriage[,]" who has "no income producing property awarded and her net equity in the property division was only $18,000.00[,]" and who "is diagnosed as suffering from mental illness." Therefore, she asserts, the trial "court could reasonably conclude from the evidence that [Wife] was unable to support herself through appropriate employment." She further contends that it was "purely speculation" to project any date for her to become self-sufficient, as "[t]here was no evidence that [her] mental health problems would be treated successfully in three years[,]" and "[t]here was no evidence presented that [she] would be able to train for gainful employment in spite of her mental health problems in three years."

Wife testified that her monthly expenses were as follows: utilities, $145.00 to $170.00; food, $250.00; telephone, $45.00; gas, $50.00; personal necessities, $50.00; medication, $80.00; and health insurance, $180.00. Feed for horses and pets required approximately $25.00 per week.

At the time of the dissolution hearing, Husband had been employed at Pace Construction out of St. Louis for twenty-four years. His position was that of superintendent, and he testified that he earned approximately $24.35 per hour. Husband also received periodic bonuses from his employer. He stated that his gross income for 1999 was $64,265.45.

Wife had worked sporadically throughout the marriage. She testified that she had been employed as a waitress for a few months in 1984. A few years later she worked at a state nursery for approximately two years and left that job to work for Pace Construction as a laborer. In 1994, she witnessed a fatal accident involving a close friend and subsequently quit her position for safety's sake because she "couldn't keep [her] mind on the job." Wife later went to work at Wal Mart as a sales associate in 1996, but left her job there because working weekends didn't work out for her and Husband.

Early in 1999, the couple started a dump truck business, and Wife handled the bookkeeping and payroll aspects of the opera-

tion. Husband testified that the business was originally conceived to get Wife back into the workforce. However, he further stated that when Wife "didn't want to mess with it anymore[,]" they sold the business in June of 1999, for a profit of $15,000.00, which they deposited into a bank account. Wife testified that they sold the business because "[i]t wasn't working."

The couple separated in July, 1999. Wife stated: "He just left. Never said a word." Soon thereafter, Wife was admitted to the "stress center in Rolla" after she overdosed on prescribed medication. There, she began receiving psychiatric treatment.

Between June and September of 2000, Wife had been employed by "Future Care." She described her job as "watching boys," and testified that she earned $7.00 per hour and worked "[n]ot quite" forty hours per week She left that employment because she was experiencing panic attacks, anxiety and depression. She stated that she found herself making excuses not to go to work.

Wife testified that she had the ability to work, "[b]ut not at this time." She also testified that she was incapable of driving and working, stating, "I can't get myself to go get in the car and go." She had received psychological treatment and was on various medications since her hospitalization after Husband left. At the time of the hearing, Wife was prescribed Eflexor, Paxil, Valium, and Prozac. She had been taking Lithium until a month before the hearing.

Wife testified that she had applied for Social Security disability benefits in March, 2001, but had yet to receive a determination. She further stated that she had taken an aptitude test for a vocational rehabilitation program, but did not pursue it beyond the aptitude test. Wife stated that in February she completed several job applications but was granted only one interview. At the time of the hearing, she was babysitting her daughter's two children for approximately six hours per day, three days per week. When questioned regarding her future plans, Wife responded, "To get better and find a job, or go to school." She further indicated that she was interested in some type of training in the medical field.

■■■ "Maintenance is founded on need and may extend only as long as the need exists." *Allen,* 927 S.W.2d at 890. "Thus, if it is uncertain that future events might obviate the need or basis on which maintenance is predicated, the award should be modifiable." *Id.*

There was before the trial court the deposition of Mia Galioto, M.D., a physician/psychiatrist who had been treating Wife. Dr. Galioto stated that she had reason to change her initial diagnosis of major depression and believed that Wife suffered from an adjustment disorder instead. Galioto explained that she was unsure that Wife's positive symptomology for depression was credible after she had observed conflicting behaviors during or after a session with Wife. She further stated that Wife had mentioned that "she had to prove a lot to the Court ... so that she could get alimony." Another indication to her that Wife's symptoms might not be credible was that Wife did not seem to improve after being on the medication Dr. Galioto prescribed, indicating to Dr. Galioto that "[s]omething's fishy."

Another medical report on Wife's condition was submitted to the trial court by stipulation of the parties during the hearing on September 12, 2001. In it, Elbert H. Bolsen, M.S., N.D., a clinical psychologist and naturopath, expressed his opinion that Wife suffered from extreme depres-

sion and recommended psychiatric treatment and counseling either through short-term hospitalization or Wife's participation in a Day Treatment Program, which involves "daily services with group and individual counseling along with psychiatric care." Dr. Bolsen stated that he had a "serious question as to this patient's ability to work because of serious personality and affective problems that are enduring and very resistant to change with or without treatment." He further opined that "the prognosis is poor for [Wife] to ever have the ability to work in a normal workplace[,]" and believed "she will need some alternative support until disability is provided."

 Limiting the duration of court-ordered maintenance is "entirely proper when the trial court has before it evidence of some impending change in the financial conditions of the parties or at least some reasonable expectation that such a change will occur." *Judy,* 998 S.W.2d at 50. However, "[a]bsent evidence that the financial prospects of the party receiving maintenance will improve in the future, no maintenance award for a limited duration should be entered; it should be of unlimited duration, the amount being subject to modification if such party's financial condition improves." *In re Marriage of Vinson,* 839 S.W.2d 38, 43 (Mo.App.1992).

Here, the trial court's award of non-modifiable maintenance for a period of thirty-six months was not supported by evidence that Wife's emotional condition will improve within any certain timeframe, thus enabling her to obtain appropriate employment sufficient to support herself within thirty-six months.

The trial court's second amended judgment is affirmed except for those portions of the judgment regarding non-modifiability and limited duration of maintenance which are reversed and the cause is re-manded with directions for the trial court to amend that judgment by removing any limitation on the duration of the maintenance and making that maintenance modifiable.

RAHMEYER, C.J., and PARRISH, J., concur.