**Michael MARTINO, Respondent,**

v.

**Ena MARTINO, Appellant.**

**No. ED 76935.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Oct. 17, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 14, 2000.

Application for Transfer Denied
Jan. 23, 2001.

Danna McKitrick, P.C., David R. Bohm, Jill J. Laux, Todd L. Beekley, St. Louis, for appellant.

Sanford J. Boxerman, Rosenblum, Goldenhersh, Silverstein & Zafft, P.C., St. Louis, for respondent.

JAMES R. DOWD, Judge.

Ena Martino appeals from a judgment reducing her ex-husband's maintenance obligation from $750 a month to $274 a month.

Michael and Ena Martino married in 1984. Their marriage lasted five years and they lived together as husband and wife for eighteen months. In 1986, Ena became pregnant, but the pregnancy was ectopic. As a result, she lost the baby and suffered an emergency hysterectomy. This of course caused Ena to become sterile. Shortly thereafter Ena was diagnosed with severe depression. She currently carries a diagnosis of schizoid-affective disorder. The evidence was undisputed that she was at the time of trial, and remains to this day, totally disabled and unable to work.

Shortly after Ena's troubled pregnancy the couple divorced. In 1989, the original dissolution decree was entered. In that decree, the trial court found that Ena's mental condition prevented her from working, that she possessed no income of her own and that Michael had the ability to provide for his own needs while still contributing to Ena's support. The trial court ordered Michael to pay $750 a month in "modifiable continuing maintenance."

After the divorce, Michael experienced both personal and financial success. Michael remarried in 1991. His new wife gave birth to twins in 1997, and his earnings increased steadily after the divorce. At the time of dissolution Michael earned approximately $60,000 a year, five years later Michael's income ranged from $89,000 to $112,000 a year. Michael's new spouse also draws a salary.

Ena is unable to work, and lives with her aunt in Miami. Shortly after the divorce, Ena began receiving Social Security Disability Income from the government in the amount of $476 a month. Ena also receives significant financial support from her family. Despite this assistance, some of Ena's medical bills remain unpaid.

Michael filed a motion to reduce his maintenance obligation on August 18, 1998. Michael did not argue inability to meet his obligation. Rather, he argued that Ena's new found income from Social Security as well as gifts from her family substantially changed her circumstances rendering the terms of the original decree unreasonable.

The trial court sustained Michael's motion and reduced his monthly obligation

from $750 to $274. The court found that substantial and continuing changes rendered the original decree unreasonable. The court reasoned that Ena now receives $476 a month in Social Security benefits that she did not receive at the time of dissolution, and that Ena now received significant financial support from her family that she did not receive at the time of the dissolution decree. In finding "changed circumstances" the court noted that Ena "had available to her resources in addition to those she is now receiving" because she "would in all likelihood be entitled to food stamps and subsidized housing." The court also took into account Michael's new marriage and the recent birth of twins to that marriage; however, Michael does not argue that his new financial responsibilities render him unable to meet the burden of the original maintenance decree.

Ena appeals the trial court's finding of substantial change of circumstance. She alleges that the trial court erred when it found her receipt of Social Security Disability payments, and her receipt of aid from her family, to be substantial and continuing changes rendering the terms of the original decree unreasonable. Ena alleges further that the court erred by improperly considering the possibility that she could qualify for food stamps or subsidized housing and by improperly considering the extra burden Michael's newborns now present to his finances.

■ Maintenance decrees may be modified only "upon a showing of changed circumstances so substantial and continuing as to make the terms [of the original decree] unreasonable." § 452.370(1) RSMo (1994). A trial court's judgment upon these matters will be sustained "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ In Missouri, the general rule is that a change in circumstances rises to the requisite statutory level when it renders the obligor spouse unable to pay maintenance at the assigned rate or when the recipient of the support could meet his or her reasonable needs with a lesser amount of maintenance. This general rule is well illustrated by the recent case of *Norman v. Norman*, 916 S.W.2d 209 (Mo.App. E.D. 1995). In *Norman*, the husband owed his former wife $65 a week in maintenance. *Id.* at 210. After the divorce, both husband and wife experienced an increase in income. But even with this increase, wife's income fell well below her reasonable financial need. *Id.* at 212. Husband moved to reduce his maintenance obligation, arguing that the wife's increased income constituted a substantial and continuing change rendering the terms of the original maintenance decree unreasonable. The trial court denied his motion, and we affirmed. We reasoned that no "substantial and continuing change" existed because the obligor spouse possessed ample wealth to pay maintenance at the assigned rate and the obligee wife would be unable to meet her reasonable financial needs if his maintenance obligation was reduced. *Id.*

This logic also appears in *Schofer v. Schofer*, 780 S.W.2d 69 (Mo.App. W.D. 1989) and *Reeves v. Reeves*, 803 S.W.2d 52 (Mo.App. E.D.1990). In *Schofer*, the Western District held that an increase in the wife's income constituted a substantial and continuing change because it allowed her to meet her own needs without receiving further maintenance from her husband. *Schofer*, 780 S.W.2d at 71. In *Reeves*, this court held that a decrease in the obligor's income and an increase in the obligee's income constituted a substantial and continuing change because the obligor no longer possessed the ability to pay and the obligee no longer required the full amount of the previously ordered maintenance to meet her needs. *Reeves*, 803 S.W.2d at 53.

■ In the present case, like *Norman,* the obligor possesses ample ability to pay his maintenance obligation as originally ordered, and the obligee, though her income has increased, remains unable to meet her reasonable financial need without that maintenance. The evidence was undisputed that Ena has a reasonable financial need of at least $1,557.92 a month. Her income from Social Security Disability and Michael's maintenance (as originally ordered) covers only $1,226 of that amount. Even with additional assistance from her family, Ena's income is still insufficient to cover her medical bills. Michael, on the other hand, possesses ample wealth to pay his maintenance obligation at the original rate. Because maintenance payments at the original rate do not create a hardship for Michael and because Ena would be unable to meet her reasonable financial needs should maintenance be reduced, the trial court erred when it reduced Michael's maintenance obligation. The addition of Social Security Disability and family assistance to Ena's income is not a change "so substantial and continuing as to render the original decree unreasonable."

Michael argues that we should consider the possibility that Ena will "more than likely" receive government benefits in the form of food stamps and subsidized housing should she choose to apply for them. The trial court expressly factored Ena's "likely" income from government benefits into its calculations, and Michael argues that the trial court properly did so. With this additional, though speculative, source of income, Michael claims that Ena is more than able to meet her financial needs despite a reduction in maintenance.

■ We hold today that government benefits, designed to lessen the impact of poverty, should not be considered when deciding if a substantial and continuing change of circumstance has occurred. Employing the possibility of future government assistance as a factual basis for a finding of changed circumstances reasons against itself. Food stamps and subsidized housing are designed to aid those who cannot meet their needs by any other means. They are not intended to alleviate one's lawful obligation to another. Michael has a lawful obligation to support his ex-wife and he has ample means to do so. It is against our public policy to alleviate one's lawful financial obligation merely because the general public may, of necessity, bear that same burden.

Michael also argues that we should consider the additional financial burden his new family imposes. The trial court agreed with this argument, noting that Michael's "remarriage and the birth of his two children are also relevant in this court's determination."

■ The birth of children into a new marriage may constitute a "substantial and continuing change," but only when the extra expense of those children renders the obligor spouse unable to meet both his own financial needs and his maintenance obligation. *Butts v. Butts,* 906 S.W.2d 859, 862 (Mo.App.1995); *Jourdan v. Jourdan,* 251 S.W.2d 380, 383 (Mo.App.1952). Michael does not claim that his new family creates a financial hardship that renders his maintenance obligation unreasonable. On the contrary, Michael admits that he has ample funds to meet both his family's need and his maintenance obligation. This factor should not be considered absent a finding that the change is of such moment as to make the original decree unreasonable.

The circuit court's judgment of August 27, 1999 is reversed. We remand with instructions to reinstate the original maintenance decree retroactive to August 27, 1999.

AHRENS, P.J., and CRANDALL, J., concur.