Joann Leah BRYANT, Appellant,

v.

Robert Julius BRYANT, Respondent.

No. ED 87298.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 13, 2007.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 15, 2007.

Application for Transfer Denied
May 1, 2007.

Lawrence G. Gillespie, Gillespie, Hetlage & Coughlin, LLC, Clayton, MO, for appellant.

Terry J. Flanagan, St. Louis, MO, for respondent.

GARY M. GAERTNER, SR., Judge.

Appellant, Joann Leah Bryant ("Wife"), appeals from the judgment of the Circuit Court of St. Louis County, following a hearing, granting Respondent's, Robert Julius Bryant ("Husband"), motion to modify the terms of the parties' dissolution judgment with respect to maintenance and child support. Wife claims the trial court erred in terminating Husband's maintenance obligation, ordering her to pay child support to Husband, and failing to award her attorney's fees. We affirm in part and reverse and remand in part.

Wife and Husband's marriage was dissolved on November 26, 2001. At that time, there were two minor children born of the marriage: a son born on August 16, 1982 and a daughter born on August 17, 1984 (individually "Daughter") (collectively "the two minor children").

The parties' dissolution judgment ("the original dissolution judgment") pertained to, *inter alia:* maintenance, custody of the two minor children, and child support. Specifically, the trial court ordered Husband to pay Wife maintenance in the amount of $2,000 per month, awarded Wife and Husband joint legal custody and Wife sole physical custody of the two minor children, and ordered Husband to pay Wife child support in the amount of $1,001 per month for the two minor children and $685 per month for one child. At the time of the original dissolution judgment, Wife earned a monthly gross income of about $2,170, and her total average monthly expenses were approximately $4,880 per

month. During that same time, Husband earned a monthly gross income of about $8,900, and his total average monthly expenses were approximately $8,650 per month.

Thereafter, Husband appealed the original dissolution judgment, which our court affirmed in *Bryant v. Bryant*, 103 S.W.3d 803 (Mo.App. E.D.2003).

On June 10, 2004, Husband filed a motion to modify the terms of the original dissolution judgment pertaining to maintenance, custody of Daughter, and child support. Husband alleged that a substantial and continuing change of circumstances had taken place rendering the terms of the dissolution judgment unreasonable. Husband asserted that maintenance should be terminated because: (1) "[Wife] ... has undertaken additional financial responsibility including ... the care, custody and control of foster children;" (2) "[Wife] [wa]s able to support herself through appropriate full time employment available to her and her financial needs have decreased;" and (3) Husband could not meet his reasonable needs. Husband also maintained that he should be awarded custody of Daughter and Wife should pay him child support because: (1) Daughter, at the age of 19, expressed her desire to live with Husband, who resided in Denver, Colorado; (2) Daughter was a full time student at the University of Denver; (3) it was in Daughter's best interest for custody to be transferred; and (4) Wife was financially able to make child support payments to Husband for Daughter.

A hearing was held on June 1 and August 30 of 2005. At the conclusion of the hearing, Wife requested approximately $12,000 in attorney's fees.

Thereafter, the trial court entered a judgment granting Husband's motion to modify. The trial court's judgment: (1) terminated Husband's maintenance obligation to Wife; (2) awarded Husband custody of Daughter; (3) ordered Wife to pay Husband $363 per month in child support for Daughter, retroactive to July 1, 2004; (4) suspended and terminated Father's child support obligation for Daughter, retroactive to July 1, 2004; and (5) ordered each party to pay their respective attorney's fees and costs. The trial court's judgment was, in part, based on its findings that: (1) Husband's monthly gross income was $12,100; (2) Husband's total average monthly expenses were approximately $10,658, which included $685 a month for child support and $2,000 a month in maintenance to Wife; (3) Wife's monthly gross income was $4,060,[1] which consisted of $2,960 a month from her employment as a teacher and $1,100 a month from her foster care contract with the Division of Family Services ("DFS"); and (4) Wife's total average monthly expenses were approximately $3,250 per month. This appeal by Wife followed.

Our review of a trial court's judgment modifying a dissolution decree is limited to a determination of whether it is supported by substantial evidence, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Corrier v. Corrier*, 112 S.W.3d 443, 446 (Mo.App. E.D.2003).

In her first point on appeal, Wife asserts the trial court erred in terminating Husband's maintenance obligation.

█ A maintenance order "may be modified only upon a showing of changed cir-

---

1. For purposes of appeal only, we consider Wife's monthly gross income to be $4,060 because this is the amount noted on the trial court's Form 14. It appears from the language of the trial court's judgment that the court may have intended for Wife's monthly gross income to be $4,800.

cumstances so substantial and continuing as to make the terms [of the original dissolution decree] unreasonable." Section 452.370.1, RSMo 2004;[2] *Martino v. Martino*, 33 S.W.3d 582, 584 (Mo.App. E.D. 2000). Generally, a change in circumstances meets this standard when it renders the obligor spouse unable to pay maintenance at the assigned rate or when the recipient of the maintenance could meet his or her reasonable needs with a lesser amount of support. *Martino*, 33 S.W.3d at 584.

In her first sub-point to Point I on appeal, Wife contends the trial court erred in terminating Husband's maintenance obligation because it considered $1,100 in foster care payments from DFS as part of Wife's financial resources.

In determining whether a maintenance award may be modified, the court "shall consider all financial resources of both parties[.]" Section 452.370.1.

Whether a trial court may consider foster care payments received by a husband or wife as part of his or her financial resources when determining maintenance appears to be an issue of first impression in Missouri.

■■■ Foster care payments triggered by foster children's presence in a foster home are intended to provide economic benefits only for the foster children, but not the foster parent. *Wilkerson v. State, Dept. of Health and Social Services, Div. of Family and Youth Services*, 993 P.2d 1018, 1023 (Alaska 1999). Foster care payments received by a foster care parent per day, per child are received by the foster parent acting in a fiduciary capacity. *Paternity of M.L.B.*, 633 N.E.2d 1028, 1029 (Ind.Ct.App.1994). These payments assist the foster parent in fulfilling his or her obligation to provide food, clothing,

and shelter for foster children placed under his or her care. *Id.* Accordingly, a foster parent has a duty to spend money received per day, per child on behalf of the foster children, the money is plainly unavailable for the foster parent's own needs, and the money is not considered income available to the foster parent. *See Rios v. South Dakota Dept. of Social Services*, 420 N.W.2d 757, 762 (S.D.1988) (noting that when a food stamp applicant has a duty to spend money only on behalf of another person, the money is plainly unavailable for the applicant's needs and is not considered income available to the applicant).

In this case, Wife testified that she received $1,100 a month from her foster care contract with DFS. Wife testified that when she received the money, it was in the form of a check payable to her, and it was for her to spend on the foster children at her discretion. She stated that she received two different payments from DFS: (1) $150 a month for agreeing to provide on-call emergency placement services one week per month, regardless of whether foster children were placed in her care ("the foster care payment Wife received for agreeing to provide emergency placement"), and (2) when she had foster children placed under her care, an age appropriate payment per day, per child, which ranged from $8 to $25 ("the foster care payments Wife received per day, per child"). At the time of the modification hearing, Wife had three foster care children placed under her care.

■■ The evidence reveals that Wife obtained the foster care payment Wife received for agreeing to provide emergency placement regardless of whether foster children were placed under her care. There is no evidence that she used these funds on behalf of the foster children.

**2.** All statutory references are to RSMo 2004 unless otherwise indicated.

Consequently, based on the evidence in this case, Wife did not have a duty to spend the foster care payment Wife received for agreeing to provide emergency placement on another's behalf. Thus, the trial court properly considered this money as part of Wife's financial resources.

■ On the other hand, even though Wife testified that the money she received was used at her sole discretion, Wife had a duty to spend the foster care payments Wife received per day, per child on behalf of the foster children placed under her care. Moreover, the foster care payments Wife received per day, per child were plainly unavailable for Wife's own needs and the trial court may not consider them as part of Wife's financial resources.

Thus, in determining whether maintenance may be modified, the trial court (1) did not err in considering the foster care payment Wife received for agreeing to provide emergency placement as part of Wife's financial resources, but (2) erred in considering the foster care payments Wife received per day, per child as part of Wife's financial resources. Because of the trial court's error, we reverse and remand with instructions to the trial court to re-examine whether it should terminate Husband's maintenance obligation in light of the reduction in Wife's financial resources. Sub-point denied in part and granted in part.

In her second sub-point to Point I on appeal, Wife maintains the trial court erred in terminating Husband's maintenance obligation because it failed to consider her $230 contribution toward Daughter's college expenses and $363 monthly child support payment when it calculated Wife's expenses.

In determining whether a maintenance award may be modified, the court "shall consider all financial resources of both parties[.]" Section 452.370.1. But under section 452.370 there is no specific requirement that the court consider the maintenance recipient's children's expenses or her child support payments when ruling on a motion to modify maintenance. Section 452.370.

■ In this case, we find that section 452.370 does not support Wife's contention that a trial court must consider the maintenance recipient's contribution towards a child's college expenses or her child support payment when determining whether a maintenance award should be modified. Because Wife has failed us to supply us with any on-point authority on this sub-point and because we are unable to find any authority to support Wife's contention, the trial court did not err by failing to consider Wife's $230 contribution towards Daughter's college expenses and $363 monthly child support payment in determining whether maintenance may be modified. Sub-point denied.

In her third sub-point to Point I on appeal, Wife argues the trial court erred in terminating Husband's maintenance obligation because it reduced Wife's expenses by $200 per month based on money Wife would soon receive from Jenny Keilholz ("Keilholz").

In a proceeding for modification of a maintenance award, the court "shall consider all financial resources of both parties, *including the extent to which the reasonable expenses of either party are, or should be, shared by a spouse or other person with whom he or she cohabits*[.]" Section 452.370.1 (emphasis added).

■ In this case, Wife testified that Keilholz made monthly contributions to the rent, utilities and food for the household. Wife stated that she expected Keilholz's monthly contribution would soon be $200 per month. Keilholz lived with Wife on a

full-time basis. Because Wife and Keilholz shared Wife's reasonable expenses and cohabitated, the trial court did not err in considering Keilholz's anticipated $200 per month contribution in determining whether maintenance may be modified. Sub-point denied.

In her second point on appeal, Wife asserts the trial court erred in ordering her to pay $363 a month in child support to Husband.

■ In her first sub-point to Point II on appeal, Wife asserts the trial court erred in ordering her to pay child support to Husband because Daughter became emancipated when she acquired sufficient credit hours to obtain an undergraduate degree.

■ Statutory interpretation is a question of law that we review de novo. *Glasgow Enterprises, Inc. v. Bowers*, 196 S.W.3d 625, 631 (Mo.App. E.D.2006). If the legislature's intent is clear and unambiguous from the words used in their plain and ordinary meaning, we are bound by that intent. *Id.*

■ Section 452.340.5 provides that a child support obligation will continue after a child reaches the age of eighteen

> [i]f the child is enrolled in an institution of … higher education not later than October first following graduation from a secondary school or completion of a graduation equivalence degree program and so long as the child enrolls for and completes at least twelve hours of credit each semester, not including the summer semester, at an institution of … higher education and achieves grades sufficient to reenroll at such institution. Section 452.340.5.

If the child is so enrolled at an institution of higher education, the child support obligation "shall continue until the child completes his or her education, or until the child reaches the age of twenty-two, which-

ever occurs first." *Id.* "Higher education" is defined to mean "any junior college, community college, college, or university at which the child attends classes regularly." *Id.* Because "completes" is undefined in section 452.340, we presume the legislature intended that the term be used in its plain and ordinary meaning as found in the dictionary. *See Tendai v. Bd. of Reg. for Healing Arts*, 161 S.W.3d 358, 366 (Mo.banc 2005). The term "complete" is defined as: "to make whole, entire, or perfect: end after satisfying all demands or requirements." *Webster's Third New International Dictionary* 465 (1976).

In this case, even though Daughter acquired sufficient credit hours to obtain an undergraduate degree, she chose not to graduate because she was pursuing a dual degree program, where, if accepted, she would obtain a graduate degree in one year rather than the normal two years required. If Daughter was accepted to the dual degree program, her projected graduation date would be June of 2006 and she would graduate with both her undergraduate degree and graduate degree at the age of twenty-one.

Wife maintains that Daughter became emancipated when she acquired sufficient hours to obtain an undergraduate degree. But section 452.340.5 does not encompass a situation where a child satisfies the demands or requirements of *a* degree, even if it is not the degree the child wants to obtain, nor does it differentiate between an undergraduate or graduate degree.

Rather, the plain language of section 452.340.5 states that so long as the child attends classes regularly, enrolls for and completes at least twelve hours of credit each semester, and achieves grades sufficient to reenroll at the university, the child support obligation shall continue until the child satisfies all demands or requirements of her education, or until the child reaches the age of twenty-two, whichever occurs

first. At the time of the modification hearing and judgment, there was no evidence that: (1) Daughter failed to attend classes regularly; (2) Daughter failed to enroll or complete at least twelve hours of credit each semester; (3) Daughter failed to achieve grades sufficient to reenroll; (4) Daughter had satisfied all demands or requirements of *her* education, i.e. the dual degree program; or (5) Daughter had reached the age of twenty-two. Therefore, pursuant to the plain and ordinary meaning of section 452.340.5, Daughter was not emancipated. Sub-point denied.

In her second sub-point to Point II on appeal, Wife contends the trial court erred in ordering her to pay child support to Husband because it included $1,100 in foster care payments from DFS when it calculated Wife's Form 14 monthly gross income.

Whether a trial court should consider foster care payments received by a husband or wife as part of his or her Form 14 monthly gross income appears to be an issue of first impression in Missouri.

The Indiana Court of Appeals has held that the foster care payments a foster parent receives per day, per child should be excluded as gross parental income under the Indiana Child Support Guidelines. *M.L.B.*, 633 N.E.2d at 1029. The court found that that holding is consistent with a provision in the Indiana Child Support Guidelines stating that child support payments received from other marriages are not gross parental income because, like those funds, foster care payments a foster parent receives per day, per child are received to facilitate a duty of day-to-day care and are received in a fiduciary capacity. *Id.*

Our child support guidelines have a similar provision to the Indiana Child Support Guidelines. The Directions and Comments for Use of Form 14, Line 1 provides that that "[e]xcluded from 'gross income' is ... child support received for children not the subject of this proceeding." We agree with the reasoning of the Indiana Court of Appeals, and hold that like those funds, foster care payments a foster parent receives per day, per child are not part of a parent's gross income because they are received to facilitate a duty of day-to-day care and are received in a fiduciary capacity.

As discussed above under the first sub-point to Point I on appeal, Wife testified that she received two different payments from DFS: (1) the foster care payment Wife received for agreeing to provide emergency placement, and (2) the foster care payments Wife received per day, per child.

■ As we also previously stated, the evidence reveals that Wife obtained the foster care payment Wife received for agreeing to provide emergency placement regardless of whether foster children were placed under her care. There is no evidence that she used these funds on behalf of the foster children. Accordingly, based on the evidence in this case, the foster care payment Wife received for agreeing to provide emergency placement was not received to facilitate a duty of day-to-day care and was not received in a fiduciary capacity. Thus, the trial court properly considered this money as part of Wife's Form 14 monthly gross income.

■ On the other hand, even though Wife testified that the money she received was used at her sole discretion, Wife had a duty to spend the foster care payments Wife received per day, per child on behalf of the children placed under her care. Furthermore, because the foster care payments Wife received per day, per child were received to facilitate a duty of day-to-day care and were received in a fiduciary capacity, the trial court may not consider them as part of Wife's Form 14 monthly gross income.

Thus, the trial court (1) did not err in considering the foster care payment Wife received for agreeing to provide emergency placement as part of Wife's Form 14 monthly gross income, but (2) erred in considering the foster care payments Wife received per day, per child as part of Wife's Form 14 monthly gross income. Because of the trial court's error, we reverse and remand with instructions to the trial court to re-calculate the Form 14 presumed child support amount in light of the reduction in Wife's Form 14 monthly gross income.[3] Sub-point denied in part and granted in part.

In her third point on appeal, Wife asserts the trial court erred in failing to award her attorney's fees. At the hearing, Wife requested approximately $12,000 in attorney's fees. Following the hearing, the trial court ordered each party to pay their respective attorney's fees and costs.

█ We review a trial court's decision denying attorney's fees for abuse of discretion. *Wills v. Wills,* 197 S.W.3d 187, 196 (Mo.App. W.D.2006). The trial court may award attorney's fees in a modification proceeding "after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action[.]" Section 452.355.1.

The Western District has held that when a reviewing court is unable to judge the equity of a dissolution judgment because the case is reversed and remanded on the merits, the reviewing court is also unable to discern whether the portion of the trial court's decision pertaining to attorney's fees constitutes an abuse of discretion. *Travis v. Travis,* 163 S.W.3d 43, 50 (Mo. App. W.D.2005). Thus, the Western Dis-

trict reversed the portion of the trial court's judgment with respect to attorney's fees and instructed the trial court to, "[u]pon reconsideration of the judgment, . . . exercise its considerable discretion and again assess legal fees as the court deems appropriate and as provided by law." *Id.*

█ In this case, under Wife's first sub-point to Point I on appeal and Wife's second sub-point to Point II on appeal, we have determined that the trial court incorrectly assessed Wife's financial resources and income, prompting this case to be reversed and remanded on the merits. Thus, similar to the Western District's position in *Travis,* we are unable to discern whether the trial court's decision regarding attorney's fees constituted an abuse of discretion. This is especially true given that under section 452.355.1, a trial court must consider the financial resources of both parties and the trial court's decision regarding attorney's fees in the instant case was premised upon an incorrect assessment of Wife's financial resources. Therefore, we reverse the portion of the trial court's judgment with respect to attorney's fees and instruct the trial court to, upon reconsideration of the modification judgment, exercise its considerable discretion and again assess attorney's fees as the court deems appropriate and as provided by law. Sub-point granted.

Based on the foregoing, we affirm in part and reverse and remand in part for further proceedings consistent with this opinion.

GEORGE W. DRAPER III, P.J., and ROBERT G. DOWD, JR., J., concur.

3. As discussed above under footnote 1, we note an inconsistency between the trial court's Form 14 and judgment as to Wife's total monthly gross income. Thus, we also instruct the trial court to resolve this issue upon remand.