Joann Leah BRYANT, Appellant,

v.

Robert Julius BRYANT, Respondent.

No. ED 90528.

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 30, 2008.

Rehearing Denied Nov. 13, 2008.

Lawrence G. Gillespie, Clayton, MO, for appellant.

Terry J. Flanagan, John W. Peel, St. Louis, MO, for respondent.

ROY L. RICHTER, Presiding Judge.

Joann Leah Bryant ("Wife") appeals the judgment entered by the trial court terminating the maintenance obligation of Robert Julius Bryant ("Husband") and denying Wife's request for an award of attorney's fees. We reverse and remand.

## I. BACKGROUND

Wife and Husband's marriage was dissolved in 2001. The dissolution judgment ordered Husband to pay Wife maintenance in the amount of $2,000 per month and determined custody of two minor children

and child support. This judgment was affirmed on appeal. *Bryant v. Bryant*, 103 S.W.3d 803 (Mo.App. E.D.2003) *Bryant I.*

In 2004, Husband filed a motion to modify the terms of the dissolution judgment. In his motion, Husband asserted that he should be awarded custody of the remaining minor child ("Daughter") and that Wife should pay him child support.[1] Husband also argued that his maintenance obligation to Wife should be terminated, as Wife's income now included compensation from the Division of Family Services ("DFS") for providing foster care services.

After a hearing at which Wife requested attorney's fees, the trial court entered judgment awarding Husband custody of Daughter and ordering Wife to pay Husband child support.[2] The trial court also terminated Husband's maintenance obligation to Wife and ordered each party to pay their respective attorney's fees and costs.

In the modification judgment, the trial court found that Wife received $1,100 per month from her foster care contract with DFS. The trial court noted that Wife received two different payments from DFS: (1) $150 per week or $650 per month for agreeing to provide emergency foster care placement, and (2) an additional payment that ranged from $8 to $25 per day when the children were actually placed in her care. The judgment further found that Wife received $2,960 per month from her teacher's salary, $400 per year for taking students to camp, and $400 per year in interest earned on bonds.

The trial court then stated in the corresponding Form 14 that Wife's monthly gross income was $4,060. This figure, $4,060, only included the $2,960 monthly teacher salary and the $1,100 from the DFS contract.

Wife appealed the trial court's judgment and this Court affirmed in part and reversed and remanded in part. *Bryant v. Bryant*, 218 S.W.3d 565 (Mo.App. E.D. 2007) *Bryant II.* In its opinion, this Court considered Wife's monthly gross income to be $4,060 as this was the amount noted on the trial court's Form 14. *Id.* at 568. However, this Court specifically noted that we considered $4,060 to be Wife's monthly gross income "for purposes of appeal only." *Id.* at 573, n. 1. We observed that, had the trial court included in its calculation all the sources of income noted in its judgment, Wife's monthly gross income would be $4,800.[3] *Id.* Accordingly, this Court instructed the trial court on remand to resolve the discrepancy between the trial court's Form 14 and judgment as to Wife's total monthly gross income. *Id.* at 573, n. 3.

In this appeal, Wife argued that the trial court erred in considering the $1,100 received per month from her contract with DFS as part of Wife's financial resources. *Id.* at 569. In discussing this point, this Court noted Wife's testimony that she received $150 a month for agreeing to provide on call emergency placement services one week per month, and additional per

---

1. At the time of this motion, Daughter was a 19 year old full time student at the University of Denver and Husband resided in Denver, Colorado. The other minor child was 22 and presumably emancipated by this time.

2. In addition, the trial court's judgment terminated Husband's child support obligation to Wife for Daughter.

3. Specifically, this Court stated that "it appears from the language of the trial court's judgment that the [trial] court may have intended for Wife's monthly gross income to be $4,800." *Id.*

diem foster care payments when the children were placed in her care. *Id.*

Because Wife had no duty to spend the money she received for providing emergency placement services on another's behalf, this Court found that the trial court properly considered this amount as part of Wife's financial resources. *Id.* at 570. However, this Court found that the trial court did err by including the per diem foster care payments in calculating Wife's monthly gross income. *Id.* This Court explained that the per diem foster care payments should not have been considered because Wife was obligated to spend such payments on behalf of the foster care children and such payments were unavailable for Wife's own needs. *Id.*

Accordingly, this Court reversed the portions of the trial court's order terminating Husband's maintenance obligation and ordering Wife to pay child support. *Id.* at 570, 572. We remanded the cause to the trial court with instructions to re-examine whether Husband's maintenance obligation should be terminated and to re-calculate the Form 14 presumed child support amount in light of the elimination of the per diem foster care payments in Wife's monthly gross income. *Id.* In addition, we instructed the trial court to resolve the inconsistency between the language of the judgment and the Form 14 as to Wife's gross monthly income amount. *Id.* at 573, n. 3. This Court further directed the trial court on remand to reconsider the payment of attorney's fees as the trial court's original decision regarding attorney's fees was premised upon an incorrect assessment of Wife's financial resources. *Id.* at 573.

On remand, the trial court received no additional evidence and found that Wife's gross monthly income is approximately $3,680. This figure consists of $2,960 per month for teaching services, $650 per month for agreeing to provide emergency foster care placement, $400 per year for additional work from her teaching position, and $400 per year in interest earned on bonds. After recalculating Wife's monthly gross income, the trial court reaffirmed its termination of Husband's maintenance obligation and denied Wife's request for attorney fees. Wife appeals.

## II.  DISCUSSION

■ In her first point, Wife contends that the trial court erred in reaffirming its termination of Husband's maintenance obligation to Wife in that the trial court determined that Wife received $650 per month for agreeing to provide emergency foster care placement. We agree.

■ On appeal, a trial court's judgment modifying a maintenance award will be affirmed unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Lombardo v. Lombardo,* 120 S.W.3d 232, 237–238 (Mo.App. W.D. 2003).

There is no evidence in the record to support the trial court's determination that Wife receives $650 per month for agreeing to provide emergency placement services.

As noted by this Court, Wife testified at the original modification hearing that she received $150 per *month* for agreeing to provide on-call emergency placement services, and that she performed these services *one week per month.* Bryant II, 218 S.W.3d at 569. However, the trial court's original modification judgment found that Wife received $150 per week *or $650 per month* for agreeing to provide emergency foster care placement. This original modification judgment failed to explain how the court arrived at the $650 per month figure, or whether the court attributed $150 or

$650 per month to Wife for providing these services.

On appeal, this Court specifically instructed the trial court on remand to resolve the discrepancy between the trial court's Form 14 and judgment as to Wife's gross monthly income.[4] *Id.* at 573 n. 3. This task necessarily required the trial court to determine on remand what amount of money Wife received for providing emergency placement services.[5] However, the trial court received no evidence on remand. While the trial court after remand found that Wife received $650 a month for emergency placement services, there is *no* evidence in the record that Wife received more than $150 *per month* for agreeing to provide emergency foster care services.

■ It is true that "a court may, in proper circumstances, impute income to a parent according to what that parent could earn by use of his or her best efforts to gain employment suitable to that parent's capabilities." *Hern v. Hern,* 173 S.W.3d 653, 655 (Mo.App. E.D.2005). However, the trial court's judgment after remand does not indicate that an additional $500 per month is being imputed to Wife.

Because there is no evidence in the record to support the trial court's finding that Wife received $650 per month for providing emergency placement services, the portion of the trial court's judgment terminating Wife's maintenance is reversed. The cause is remanded to the trial court with instructions to receive additional evidence on the amount of money Wife receives for providing emergency placement services, and to redetermine Wife's monthly gross income in light of this evidence. There was also testimony in *Bryant II* concerning the amount of Wife's expenses that would be shared by Jenny Keilholz ("Keilholz"). On remand, the trial court should also receive evidence concerning the amount of money contributed by Keilholz, and the effect that contribution should have on Wife's monthly expenses.

After receiving this evidence, the trial court is directed to redetermine on remand whether Wife's maintenance obligation should be modified or terminated in light of any changes in its assessment of Wife's financial resources. Point granted.

In her second point, Wife contends that the trial court erred in ordering each party to pay their own attorney fees with regard to the modification judgment, as well as with regard to attorney fees on appeal, in that this decision was premised upon an incorrect assessment of Wife's financial resources. As we previously stated in *Bryant II:*

"we are unable to discern whether the trial court's decision regarding attor-

4. The trial court's original modification judgment described the following sources of income for Wife: 1. $150 per week or $650 per month for emergency foster care services 2. $1,100 per month from her foster care contract 3. $2,960 per month for her employment as a teacher 4. $400 per year, or $33 per month, for taking six grade students to camp 5. $400 per year, or $33 per month, from interest earned on bonds. However, the amount listed in the Form 14, $4,060, only included the $2,960 and the $1,100.

5. This Court in *Bryant II* noted that the language of the trial court's judgment indicated that the trial court may have intended for Wife's gross monthly income to be $4,800. This figure is reached by including all of the sources of income listed in the judgment. In order to reach this total, the emergency placement payment must be considered $650 a month, not $150 a month: $650+ $1,100 + $2,960 + $33 + $33 = approximately $4,800; whereas $150 + $1,100 + $2,960 + $33 = approximately $4,300. However, as stated above, this Court also noted that Wife testified that she only received $150 per month for providing emergency placement services.

ney's fees constituted an abuse of discretion. This is especially true given that under section 452.355.1, a trial court must consider the financial resources of both parties and the trial court's decision regarding attorney's fees in the instant case was premised upon an incorrect assessment of Wife's financial resources. Therefore, we reverse the portion of the trial court's judgment with respect to attorney's fees and instruct the trial court to, upon reconsideration of the modification judgment, exercise its considerable discretion and again assess attorney's fees as the court deems appropriate and as provided by law." *Bryant II*, 218 S.W.3d at 573.

The trial court is once again instructed to exercise its considerable discretion and assess attorney's fees as the court deems appropriate and as provided by law.

## III. CONCLUSION

The cause is reversed and remanded for the receipt of additional evidence on whether Wife's maintenance should be modified or terminated. Upon reconsideration of the modification judgment, the trial court is further directed to re-examine whether Husband should be required to pay any portion of Wife's attorney's fees.

LAWRENCE E. MOONEY and
GEORGE W. DRAPER III, JJ., concurs.