

# In the Missouri Court of Appeals
# Eastern District

### DIVISION ONE

| | | |
|---|---|---|
| JAMES K. DAVIS, | ) | No. ED107835 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Honorable Bruce Hilton |
| JOAN C. DAVIS, | ) | |
| | ) | |
| Respondent. | ) | FILED: May 26, 2020 |

James K. Davis ("Appellant") appeals from the judgment of the Circuit Court of the 21ˢᵗ Circuit denying his motion to modify his maintenance payments ("Motion to Modify") to Joan C. Davis ("Respondent"), and ordering him to pay a portion of Respondent's attorney's fees. We reverse and remand.

### I. Background

The facts underlying this case date back to July 25, 2014, when the parties' marriage was dissolved via settlement, without trial. The dissolution judgment ("Dissolution Judgment") included an order that Appellant pay Respondent $1,400 per month in modifiable maintenance.

Appellant was self-employed as the owner of Fentech ("the Company") both at the time of the Dissolution Judgment and the time of the trial in this modification case ("Modification Trial"). The Company manufactures crankshaft balancing machines for sale to race car owners, and supplements its income by performing machine work. Appellant testified that at the time of

the Dissolution Judgment he had four competitors, while at the time of the Modification Trial he had six. Further, Appellant testified to decreased sales of the Company's machines, from six in 2016, to four in 2017, and two orders as of the first day of the Modification Trial in April 2018. As of the second day of the Modification Trial in November 2018, Appellant had three additional orders, but only three of the five customers had paid for the machines.

Appellant derives his income from the Company, and also from rental income because he owns the building in which the Company is located. The Company pays Appellant an income of $2,000 per month, and he gains $2,800 per month in rental income. However, Appellant testified that due to cash flow issues, the Company cannot consistently pay him his monthly salary or rental income. As of the first day of the Modification Trial, Appellant had only received $5,600 of the total $16,800 he should have received, and as of the second day of the Modification Trial he had received a total of $15,400.

Respondent was 56 years old at the time of the Modification Trial, and she was working at Port Day Salon ("the Salon"), where she also worked at the time of the Dissolution Judgment. Respondent started at the Salon making $8 per hour, and at the time of the Modification Trial had advanced to $11 per hour. Her duties were taking appointments, answering phones, taking customer payments, cleaning, and occasionally giving shampoos to patrons. Respondent testified at the Modification Trial that she has had numerous knee surgeries, and due to problems with her knees she was unable to stand or walk for more than 20 minutes at a time. Respondent never applied for disability, but her boss at the Salon allowed her to wear tennis shoes, and elevate and ice her knee when necessary.

As part of the Dissolution Judgment, Respondent was awarded the marital home free of debt. Respondent lived there with the parties' 29-year-old son ("Son"). Respondent testified at

2

the Modification Trial that Son did not contribute to her reasonable expenses, and that no one else lived at her home. However, beginning in April 2016 Appellant began noticing a strange car parked in the driveway of Respondent's home. Appellant explained that, while he lives in Hermann, he regularly travels to St. Louis on business, providing him the opportunity to drive by Respondent's home. He would later find out this car belonged to Son's friend F.G.N. ("Friend"). Appellant began documenting the times he saw Friend's car in the driveway. From April to December 2016, Appellant saw Friend's car in the driveway on 11 separate occasions; from January to August 2017, 17 separate occasions; and in the months leading up to trial, 8 separate occasions from January to March 2018. Respondent denied Friend was living at her home, but admitted that he got a lot of his mail there, that he was on their family cell-phone plan, and that his car was registered there.

Appellant filed his Motion to Modify on June 20, 2017. The Motion to Modify alleged there was a "substantial and continuing change in circumstances in the income of the parties warranting a change in the terms of the [Dissolution Judgment] with regard to maintenance." As evidence of this change in circumstances, Appellant pointed to the decline in business for the Company combined with an increase in expenses, and the fact that Respondent's income had increased since the Dissolution Judgment. At Appellant's request, Respondent was interviewed by Ms. Sherry Browning ("Browning"), a vocational expert, as part of an evaluation to determine what jobs Respondent was qualified to work. Respondent informed Browning about her medical issues, but did not provide any medical records despite multiple requests to do so. When asked by Browning whether anything in her medical records noted restrictions on her ability to work, Respondent said there were no such restrictions. Browning's investigation into employment

options for Respondent concluded she would be best suited for "semi-skilled" work, at a rate of $17,900 to $29,000 per year.

The matter was tried before a Commissioner on April 10, 2018, and November 16, 2018. Appellant's federal income tax returns showed his income was $74,216 in 2015, $75,145 in 2016, and $58,051 in 2017. The trial court averaged Appellant's income to $73,890 per year, or $6,157 per month before taxes. The trial court found Appellant's monthly expenses to be $4,072. Respondent's statement of income and expenses listed an average net monthly income of $2,717 with average monthly expenses of $2,791.90. However, at the Modification Trial Respondent admitted that multiple expenses were inflated, and that her actual expenses were roughly $2,000 per month. The trial court found Respondent's income amounted to $20,592, and that her monthly expenses were $3,114 per month. On April 3, 2019, the Commissioner filed her findings and recommendations denying the Motion to Modify, and ordering Appellant to pay a portion of Respondent's attorney's fees. Those findings and recommendations were adopted as the judgment of the trial court on that same date. In his request for findings of fact, Appellant had requested the trial court list its reasons for any order of attorney's fees. The only reason provided for the attorney's fees award was Appellant's "greater financial resources."

This appeal follows.

## II. Discussion

Appellant raises three points on appeal. First, Appellant argues the trial court's order denying the Motion to Modify is not supported by the evidence, because the shortfall, if any, between Respondent's income and expenses is substantially less than determined by the trial court in that her reasonable monthly expenses, as demonstrated by her actual spending, were substantially less than the $3,114 found by the court.

4

Second, Appellant alleges the trial court's order denying his motion to modify is against the weight of the evidence, because the court failed to take into account Respondent's cohabitation arrangement, in that both Son and Friend reside with her, and the court did not consider the extent to which both cohabitants should share in the payment of Respondent's reasonable expenses.

Third and finally, Appellant argues the trial court's order for him to pay $10,000 in attorney's fees to Respondent was an abuse of discretion because the court failed to consider all relevant factors in ordering the payment of fees, in that it only made a finding as to Appellant's ability to pay, the evidence demonstrated Respondent's savings had increased while Appellant's had declined, and the court did not take into account the merits of the action or the conduct of the parties.

## Points I and II

Because Appellant's first two points are analyzed under a different standard of review than his third point, we analyze them separately.

A.  Standard of Review

In a court-tried action to modify a maintenance award, we conduct our review in accordance with the standards enunciated in Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976).  Layden v. Layden, 514 S.W.3d 667, 671-72 (Mo. App. E.D. 2017).  Thus, we will affirm the trial court's judgment unless it is "not supported by the evidence, is against the weight of the evidence, or [it] erroneously declares or applies the law."  Id. at 672.  In reviewing the trial court's decision, we view all evidence and reasonable inferences in the light most favorable to the prevailing party.  Hughes v. Hughes, 505 S.W.3d 458, 462 (Mo. App. E.D. 2016); But see In re Marriage of Murphy, 71 S.W.3d 202, 205 (Mo. App. S.D. 2002) ("Even under this broad

5

discretion standard, a maintenance award must be "made within a reasonable tolerance of proof").

*Point I: The Trial Court's Finding that Respondent had Monthly Expenses of $3,114 is not Supported by the Evidence*

In his first point on appeal, Appellant alleges the trial court erred in denying the Motion to Modify because Respondent's monthly expenses are substantially less than the $3,114 found by the trial court, and the trial court's denial of the Motion to Modify was based on inflated expenses, and was not supported by the evidence. We agree.

In determining a maintenance award, Section 452.335 RSMo. requires the trial court to determine the "reasonable needs" of the party seeking maintenance. Section 452.335.1; see Gerecke v. Gerecke, 954 S.W.2d 665, 669 (Mo. App. S.D. 1997) ("maintenance payments must be limited to the needs of the party receiving support . . . and to not provide for an accumulation of capital"). The statute gives the trial court discretion to determine the amount it deems "just," but lists numerous factors the court is to consider in making that determination, including "the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently," as well as "the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance." Section 452.335.2(1),(8). While the statute requires the award be just, it "does not require the court to award maintenance adequate to meet all of the needs of the spouse even if the maintaining spouse has sufficient resources to provide such support." Rich v. Rich, 871 S.W.2d 618, 624 (Mo. App. E.D. 1994) (quoting Steinmeyer v. Steinmeyer, 669 S.W.2d 65, 68 (Mo. App. E.D 1984)). One spouse's ability to pay "does not justify an otherwise excessive and unwarranted maintenance award." Gerecke, 954 S.W.2d at 670.

Modification of maintenance awards is governed by Section 452.370, which provides that a maintenance judgment may only be modified "upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable." Section 452.370.1. Generally, a change in circumstances meets this standard "when the recipient of the maintenance could meet his or her reasonable needs with a lesser amount of support." Bryant v. Bryant, 218 S.W.3d 565, 569 (Mo. App. E.D. 2007).

The trial court found Respondent had monthly expenses of $3,114. This finding is not supported by the evidence, for multiple reasons. First, there were numerous miscalculations in Respondent's statement of income and expenses, which she admitted at the Modification Trial. In her statement of income and expenses, Respondent claimed she had monthly expenses of $2,791.90. On cross examination, Appellant's Counsel went through Respondent's statement of income and expenses with her. Respondent's statement of income and expenses claimed her water bill was $174.55 per month, but Respondent admitted she paid her water bill quarterly, and that it actually amounted to $39.91 per month. While Respondent's statement of income and expenses claimed she paid $171.22 per month for electricity, she admitted on cross examination that she actually paid $121.80 per month. Respondent's statement of income and expenses claimed she paid $543.32 per month for insurance, but she admitted that she obtained new insurance before trial that reduced that monthly cost to $256.11.

Additionally, Respondent claimed to have monthly credit card bills of $215 for the Chase account, and $250 for the US Bank Account. However, she acknowledged these expenses should be reduced $465 because many of the expenses she paid with the credit cards were the same as those listed in her statement of income and expenses under categories such as food, gasoline, and utilities, thereby resulting in a duplication. After going through the erroneous

calculations in Respondent's statement of income and expense, she and Appellant's counsel had the following exchange:

> Appellant's Counsel: . . . it's about $774 less than what you have listed [on your statement of income and expenses], correct?
>
> Respondent: Yeah.
>
> Appellant's Counsel: So your expenses are around $2,000 a month; isn't that correct?
>
> Respondent: Yes.

Despite this admission, the trial court found Respondent had monthly expenses of $1,000 more than she actually admitted to at trial. Such a finding was not supported by the evidence.

Respondent's brief on this first point devotes much of its time to arguing, essentially, that the trial court's finding was not erroneous because Appellant can afford to pay the $1,400 per month in maintenance. Respondent points to the fact that Appellant was able to start a new farming business, and argues that his decrease in salary was not as dramatic as he alleged. However, this argument ignores the fact that one spouse's ability to pay is only one of the factors the court should consider in making its maintenance determination. See Gerecke, 954 S.W.2d at 670 (stressing that one spouse's ability to pay "does not justify an otherwise excessive and unwarranted maintenance award"). Even assuming Appellant can afford to continue paying $1,400 per month in maintenance, that does not mean he is required to. See Rich, 871 S.W.2d at 624 (While the statute requires the award be just, it "does not require the court to award maintenance adequate to meet all of the needs of the spouse even if the maintaining spouse has sufficient resources to provide such support").

Additionally, Respondent's argument ignores the rule that maintenance awards are not meant to provide for "an accumulation of capital," and also that there is a substantial and

8

continuing change in circumstances where the recipient of maintenance "could meet his or her reasonable needs with a lesser amount of support." Gerecke, 954 S.W.2d at 669; Bryant, 218 S.W.3d at 569. As part of the Dissolution Judgment, Respondent was awarded the marital home free of debt. Appellant showed that while allowing her credit card balance to climb so high that she must make monthly payments of $465, Respondent has elected to make payment by borrowing against her home using her home equity line of credit ("HELOC"). Further, Appellant also showed Respondent's savings have increased substantially since the Dissolution Judgment. Respondent was awarded the parties' Northwestern Mutual retirement account ("Northwestern Mutual Account") as part of the Dissolution Judgment, and its value increased by $60,000 in 2017 and then $16,000 in the months leading up to the Modification Trial, for a total of $341,889. Respondent testified she has not withdrawn any funds from that account. Thus, while the Company's business is declining and Appellant's expenses rising, Respondent was borrowing against the home she was awarded free of debt in the Dissolution Judgment, while substantially increasing her savings. Even if Appellant can afford to pay the $1,400 per month in maintenance, he showed Respondent does not have a reasonable need of that amount. That is a change in circumstances so substantial and continuing such that the maintenance award is unreasonable. See 452.370.1

Therefore, the trial court's denial of the Motion to Modify was based on inflated expenses, and was not supported by the evidence. Point I is granted. On remand, the trial court is directed to determine the appropriate modification of Appellant's maintenance obligation, in light of Respondent's monthly expenses that were supported by the evidence at the Modification Trial.

9

*Point II: The Trial Court Failed to Consider Respondent's Cohabitation with Son and Friend, and the Extent to which Son and Friend Should Share in the Payment of Her Reasonable Expenses*

Appellant's second point on appeal alleges the trial court's denial of the Motion to Modify was against the weight of the evidence, in that the trial court failed to account for Respondent's cohabitation with Son and Friend, and the extent to which they should share in Respondent's reasonable expenses. We agree.

When considering whether there has been a substantial change in circumstances, the court "**shall** consider all financial resources of both parties, including the extent to which the reasonable expenses of either party are, or should be, **shared by a spouse or other person with whom he or she cohabits** . . . ." Section 452.370.1.

As discussed above, in the Dissolution Judgment Respondent was awarded the marital home free of debt. Son resides with Respondent in the marital home. However, as Respondent testified at the Modification Trial, Son does not contribute anything to the payment of Respondent's reasonable expenses. In its judgment denying the Motion to Modify, the trial court found "[Son] pays for his own food. The Court finds Respondent does not incur additional expenses because [Son] lives with her." However, this finding was against the weight of the evidence because it ignores other reasonable expenses such as utilities. There is no justification why Son should not pay for a share of Respondent's reasonable expenses.

Additionally, Appellant presented substantial evidence that Friend is cohabiting with Respondent and Son, but not paying for a share of the reasonable expenses. The trial court found "[Friend] stays at Respondent's home on some occasions. Respondent does not pay for [Friend's] food. [Friend's] presences at the home does not cause Respondent to incur additional expenses." Again, this finding ignores other costs such as utilities. Further, the evidence

10

presented showed Friend was actually cohabiting with Respondent and Son. From April to December 2016, Appellant saw Friend's car in the driveway on 11 separate occasions; from January to August 2017, 17 separate occasions; and in the months leading up to trial, 8 separate occasions from January to March 2018. Respondent denied Friend was living at her home, but admitted that he got a lot of his mail there, that he was on their family cell-phone plan, and that his car was registered there. Respondent provided multiple justifications for why Appellant saw Friend's car at Respondent's home so many times, but we find none of those justifications persuasive.

Respondent argues that Son does not even cohabit with her because they are not "in a romantic relationship" that resembles marriage. This argument distorts both the law and Appellant's argument on this point. Appellant in no way argues that Respondent and Son cohabit in a relationship resembling marriage. In support of her argument, Respondent cites this Court's decisions in Hughes, 505 S.W.3d at 458, and Herzog v. Herzog, 761 S.W.2d 267 (Mo. App. E.D. 1988). However, while those cases stand for the proposition that cohabitation as a substitute for marriage is justification for the termination of a party's right to maintenance, they in no way say that is the only type of cohabitation. See Herzog, 761 S.W.2d at 268. Further, this Court's decision in Bryant v. Bryant makes clear that cohabitation, absent a relationship resembling marriage, can justify termination of a maintenance award. 218 S.W.3d at 570-71. In Bryant, the trial court pointed to the wife's friend's cohabitation and $200 per month contribution to the reasonable expenses as evidence supporting the termination of husband's maintenance obligation. Id. On appeal, this Court affirmed that conclusion. Id.

Even assuming *arguendo* that Friend was not cohabiting with Respondent and Son, that does not negate the fact that the trial court failed to examine the extent to which Son should be

11

contributing to Respondent's reasonable expenses.  See Section 452.370.1.  Point II is granted.

On remand, the trial court is directed to determine the appropriate modification of Appellant's

maintenance obligation, taking into account Respondent's cohabitation with Son and Friend and

the fact that they should share in the payment of her reasonable expenses.

## Point III

Because we review Appellant's third point under the abuse of discretion standard, we

analyze it separately from points I and II.

A. Standard of Review

The awarding of attorney's fees in a modification proceeding is "within the sound

discretion of the trial court."  Winchester v. Winchester, 163 S.W.3d 57, 62 (Mo. App. S.D.

2005).  We review the award of attorney's fees for an abuse of discretion, meaning the party

challenging the award must show "the award was clearly against the logic of the circumstances

and so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of

deliberation."  Id. (quoting Clark v. Clark, 101 S.W.3d 323, 330 (Mo. App. E.D. 2003)).

B.  Analysis

*The Trial Court Abused its Discretion in Ordering Appellant to Pay $10,000 of Respondent's Attorney's Fees*

In his third and final point on appeal, Appellant alleges the trial court abused its

discretion in ordering that he pay $10,000 of Respondent's attorney's fees, because it failed to

consider all relevant factors, in that it only made a finding as "ability to pay."  Appellant reasons

that the evidence demonstrated Respondent's savings had increased while the Company's

business had declined, and the court did not take into account the merits of the action or the

conduct of the parties.  We agree.

Missouri court's follow the "American Rule" in awarding attorney's fees, which provides "that parties to a lawsuit are to bear the expenses of their own attorney fees." Gurley v. Montgomery First Nat. Bank, N.A., 160 S.W.3d 863, 871 (Mo. App. S.D. 2005) (internal quotations omitted) (quoting Chapman v. Lavy, 20 S.W.3d 610, 614 (Mo. App. E.D. 2000). Pursuant to this rule, "absent a statutory authorization or contractual agreement, with few exceptions, each litigant must bear his own attorney's fee." Id. Section 452.355 provides that "the court from time to time after considering *all relevant factors* including the *financial resources* of both parties, *the merits of the case*, and the actions of the parties during the pendency of the action, may order a party to pay a reasonable amount . . . for attorney's fees. . . ." Section 452.355.1.

The trial court's award of attorney's fees read, "The court has considered RSMo. 452.355 and has determined that [Appellant] has greater financial resources than Respondent. The Court orders that [Appellant] shall pay $10,000 to Respondent towards attorney (sic) fees." While there is no allegation of poor conduct by either party during this case, there is still no evidence the trial court considered the merits of the action in making its award. As indicated by our analysis of Appellant's first two points, his action was clearly meritorious. Appellant showed that his income had decreased, that Respondent's income had increased, that Respondent inflated her expenses listed on her statement of income and expenses, and that her savings had grown by nearly $80,000 since the Dissolution Judgment. Further, Appellant showed Son and Friend are cohabiting with Respondent while contributing nothing to her reasonable expenses. Thus, the trial court erred in not considering the merits of the action making its award, and even assuming *arguendo* it did consider the merits, finding the action non-meritorious was an abuse of discretion. See Winchester, 163 S.W.3d at 62.

Additionally, the trial court abused its discretion in finding that Appellant had greater financial resources than Respondent, such that a requirement he pay $10,000 of her attorney's fees was reasonable. The evidence at the Modification Trial showed that Respondent had $9,000 in cash savings, in addition to the near $350,000 in the Northwestern Mutual Account. Meanwhile, Appellant's business was declining while his expenses were increasing. Appellant had a $315,000 mortgage, cash savings of $8,000, and an IRA of just more than $150,000. Appellant also had a loan against his farm in the amount of $30,526, and a loan against the Company in the amount of $76,132, in addition to approximately $30,000 in credit card debt. Thus, the evidence showed a much darker picture of Appellant's finances than the trial court acknowledged, and the trial court abused its discretion in ordering Appellant pay $10,000 of Respondent's attorney's fees. Point III is granted. On remand, the parties should bear the costs of their own attorney's fees.

### III. Conclusion

Appellant showed changed circumstances so substantial and continuing as to make the terms of the maintenance award unreasonable. This case is reversed and remanded to the trial court for further proceedings consistent with this opinion.

_____
ROY L. RICHTER, Judge

Robert M. Clayton III, P.J., concurs.
Robert G. Dowd, Jr., J., concurs.

14